**Keith WASSERMAN and Kristi Wasserman, Appellants,**

v.

**Hayden BARTHOLOMEW, Ken Steinnerd, City of Fairbanks, John Roberts, and State of Alaska, Appellees.**

No. S–5584.

Supreme Court of Alaska.

Sept. 20, 1996.

---

William R. Satterberg, Jr., Fairbanks, for Appellants.

James R. Blair, Winfree & Hompesch, Fairbanks, for Appellees Hayden Bartholomew, Ken Steinnerd, and City of Fairbanks.

Randy M. Olsen, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellees John Roberts and State of Alaska.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS, and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

*OPINION*

CARPENETI, Justice Pro Tem.

## I. INTRODUCTION

Keith Wasserman was mistakenly apprehended by police, who incorrectly believed he was a fleeing felon, as he shopped for groceries. Wasserman and his wife, Kristi Wasserman, sued local police and state troopers, the City of Fairbanks (the City) and the State of Alaska for the acts of the peace officers. The trial court, sitting without a jury, returned a verdict in favor of the defendants. The Wassermans appeal. They claim that the superior court erred in a number of evidentiary rulings, in denying their post-trial motion to disqualify the judge, and in evaluating the evidence.

We affirm the trial court with respect to all of its rulings but one. As to its exclusion of one witness's testimony, we reverse and remand for appropriate disposition.

## II. FACTS AND PROCEEDINGS

### A. The Facts

In October 1990 Wasserman was shopping at University Center Safeway in Fairbanks. Upon reaching the check-out stand, he asked a Safeway employee about the location of an item that had been advertised as on sale but which he was unable to find. He was directed to the appropriate section and, leaving his young son momentarily at the cash register, began jogging toward that part of the store. About that time, a group of Fairbanks police officers and state troopers entered Safeway looking for John Palmer, a fleeing felon. Wasserman had the misfortune to match several characteristics of the rough description of Palmer possessed by the officers.

At this point Wasserman's account of the facts diverged from the defendants' version. He testified to hearing someone yell "Stop!" and seeing dark-clad men running after him. He said he was then grabbed by the jacket and told to put his hands behind his back. He pulled away and asked, "What for?" The command was repeated, and Wasserman again refused, exclaiming, "Wait a minute, I've got my rights." According to Wasserman, someone (later identified as State Trooper John Roberts) then wrapped an arm around his neck. Then Trooper Roberts either lost his balance or someone knocked Wasserman's feet out from under him, and everyone fell to the floor. Wasserman stated that he could not breathe at this point, and that someone told him, "Put your hands behind your back and we'll let you breathe." Wasserman put his hands behind his back, was handcuffed, and was pulled up to his feet. Shortly afterward, the police discovered that they had the wrong man. Wasserman was released, and the officers left to pursue Palmer, although a lieutenant remained behind to discuss the matter.

Wasserman also testified that during this incident the police did not initially identify themselves and that he did not recognize them as officers of the law. In addition, he claimed that the officers never explained their purpose in stopping him, never asked him for identification, and never told him he was under arrest. He sued the City of Fairbanks and two individual Fairbanks officers, as well as the State of Alaska and two troop-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

ers,[1] claiming that the officers' actions constituted "assault, battery, a negligent infliction of harm, and unreasonable use of force" causing him a number of serious injuries.[2] Wasserman's wife Kristi sued for loss of consortium and emotional distress.[3]

The accounts of the incident provided by the police officers and several bystanders differed significantly from Wasserman's description. According to the officers' testimony, they were in full uniform and unmistakable as police officers. The defense contended that Fairbanks police officer Bartholomew entered the store and made eye contact with Wasserman, and then raised his hand and called out, at which point Wasserman turned and began to run. According to Officer Bartholomew, when Wasserman stopped, Bartholomew informed him that he resembled a federal fugitive and requested identification. Officer Steinnerd and Trooper Manns also contended that Wasserman was advised that he resembled a federal fugitive.[4]

Wasserman did not produce identification, nor did he say that he was not the man the officers were seeking. State Trooper Roberts reached the group as the city officers were attempting to grab Wasserman's arms. Roberts testified that he approached Wasserman from behind and threw his arms around Wasserman's shoulders or arms. Roberts lost his balance, and next remembers "us all going to the floor." Because Wasserman continued to struggle, a Fairbanks officer handcuffed him. The officers then pulled Wasserman to his feet, learned that he was not the fugitive, and released him.

Roger Hanson, the produce manager at Safeway, essentially corroborated the officers' account. Hanson heard Wasserman being asked to produce identification, and said that Wasserman did not comply and began to resist. Hanson testified that an officer grasped Wasserman by the shoulder, and Wasserman pulled away. He testified that the officers were "str[iving] to keep [Wasserman] from moving his arms" and Hanson had the impression that "they wanted him to keep his hands in sight." He explained that "[a]s [Wasserman] was pulling more away from [the police] they grabbed him more forcefully." Hanson then saw an officer (Trooper Roberts) grab Wasserman around the chest from behind. Hanson then saw Wasserman "[w]restl[ed] down" to the floor.[5]

### B. Motions Before and During the Trial

Shortly before trial, the case was reassigned to Superior Court Judge Ralph Beistline, who had recently been appointed to the bench. Approximately one month later, the Wassermans invited the defendants to stipulate to a bench trial. The defendants accepted, so long as the case was tried before Judge Beistline.

During discovery one of the Wassermans' witnesses, Delores Delacruz, stated at her deposition that she would not answer questions without first obtaining immunity from future contacts with police agencies. The Wassermans said that they intended to call Delacruz as a witness at trial, and moved for a protective order.[6] This motion was denied.

---

1. The individuals the Wassermans sued were Fairbanks Officers Hayden Bartholomew and Ken Steinnerd and State Troopers John Roberts and Jeffrey Manns. The claims against Manns were later dismissed by stipulation.

2. Wasserman contends that Trooper Roberts' hold on him was "effectively a choke hold," which "placed [him] in serious danger of being choked to death." He also claims he was injured in the fall to the floor, and again when one of the officers dug a knee into his back as he lay facedown on the floor. Finally, he claims that his wrists were injured by improperly-applied handcuffs.

3. Wasserman's son Levi sued for emotional distress, but Levi Wasserman's case was later dismissed by agreement between the parties.

4. Wasserman acknowledged on cross-examination that there was a "good possibility" that Officer Bartholomew told him, "You resemble a person we're looking for, a felon."

5. Hanson's account of the incident was the most detailed of any third-party witness. Other fact witnesses were called to the stand by Wasserman and partially corroborated each side's stories.

6. Alleging a series of past abuses on the part of the Fairbanks Police Department directed against Delacruz and her family and alleging that she feared future harassment were she to testify, the Wassermans sought a protective order "precluding the police department from contacting [Delacruz] except in the context of actively attempting to stop a crime in progress, or in the event she contacts them for assistance."

On the fourth day of trial, when the Wassermans stated that they would call Delacruz as a witness, the defendants expressed surprise and moved to strike her from the witness list. The court granted the motion to strike.[7] The court's rationale for excluding her testimony was that the defense had been denied discovery of her testimony, and that it would merely be cumulative. The Wassermans later attempted to call Delacruz as a rebuttal witness. The court denied this request for similar reasons.

## C. The Trial Court's Judgment

The trial court found that the law enforcement officers had a justified belief that a federal fugitive, armed and dangerous, was in the Safeway store and that Keith Wasserman resembled that fugitive. It found that "[t]he police officers were in full uniform," that Mr. Wasserman should have known they were officers, that they requested identification, and that they told Wasserman that he resembled a fugitive. In the ensuing struggle, the court found that Roberts held Wasserman by the shoulders, did not use a choke hold and did not use deadly or excessive force, and that their contact was of short duration. The court described the incident as "an unfortunate combination of mistaken identities and misunderstandings."

As a matter of law, the court found that the defendants were peace officers whose use of force was nondeadly and justified as reasonable under the circumstances. The defendants' use of force, it held, was statutorily privileged and did not constitute negligence. It denied the Wassermans' claims and dismissed them with prejudice.

## D. The Post-trial Attempt to Disqualify the Judge

Three months after the trial court entered its findings and conclusions, the Wassermans filed a motion for a new trial. The motion was essentially a motion to disqualify Judge Beistline for cause pursuant to AS 22.20.020. Before his elevation to the bench, Judge Beistline worked in Fairbanks for the law firm of Hughes, Thorsness, Gantz, Powell & Brundin. The Wassermans stated in their motion that they had learned only after trial that Hughes, Thorsness had represented the City of Fairbanks in a high profile case involving the City's police and fire departments. According to the Wassermans, their subsequent research indicated that the City had paid "several hundreds of thousands of dollars" in legal fees to Hughes, Thorsness. The Wassermans argued that because Judge Beistline failed to disclose in their case that his firm had previously represented the City of Fairbanks, a defendant in their case, and to recuse himself "if appropriate," a new trial was warranted.

Judge Beistline denied the motion for a new trial because it was both untimely and "factually and legally unsupported." Regarding timeliness, Judge Beistline noted that the motion was brought three months after trial. He took judicial notice that counsel for the Wassermans, William Satterberg, knew at the time of the trial that Judge Beistline had formerly represented the City of Fairbanks. Judge Beistline's reason for taking judicial notice was that he and Satterberg had been opposing counsel (with Beistline representing the City of Fairbanks) in a 1989 case. Furthermore, Judge Beistline said, in the recent high profile case that allegedly brought Hughes, Thorsness's representation of Fairbanks to the Wassermans' attention, Judge Beistline had performed only insignificant legal work for the City.[8] Judge Beistline's decision also rested on the facts that Satterberg had supported Judge Beistline's appointment to judicial office, that Satterberg had told a television interviewer that Judge Beistline was fair, that "[i]t is unlikely that an attorney of Mr. Satterberg's stature ... would be unaware of" Hughes, Thorsness's representation of the City of Fairbanks, and that Satterberg "was associ-

---

7. In order to meet the argument that the defendants had been denied discovery by Delacruz's earlier statement that she would not answer questions without immunity, the Wassermans suggested that the defendants could depose Delacruz over a three-day weekend, which was about to occur. The defense continued to object, and the court excluded her testimony, stating that "it's not necessary to put the parties through having to conduct discovery over the weekend."

8. Subsequent testimony showed that the amount of work he had performed was one-half hour.

ated at the time with two former associates of Hughes, Thorsness."

After Judge Beistline denied the Wassermans' motion, the Wassermans applied to this court to disqualify Judge Beistline for cause. The issue was assigned to Judge Hodges for review pursuant to AS 22.20.020(c).

Judge Hodges affirmed Judge Beistline's conclusion that AS 22.20.020 did not require Judge Beistline to recuse himself or to disclose his former firm's representation of the City. On the related issue whether Judge Beistline's presiding created an appearance of impropriety, Judge Hodges remanded to Judge Beistline for determination. Briefing on the issue ensued. Judge Beistline found that there was no appearance of impropriety, and after hearing oral argument Judge Hodges affirmed that ruling.

On appeal, the Wassermans challenge the exclusion of Delacruz's testimony, the denial of their motions to disqualify Judge Beistline for cause, and several other issues.

## III. DISCUSSION [9]

### A. The Testimony of Delores Delacruz Was Erroneously Excluded.

The Wassermans' first point on appeal claims that the trial court erred in refusing to allow the testimony of Delores Delacruz, whom the Wassermans describe as the non-party witness with the closest view of the Safeway incident. The Wassermans characterize the court's exclusion of her testimony as a Civil Rule 37 sanction for her refusal to testify at a deposition. The court stated an additional reason for excluding Delacruz's testimony: that it would be cumulative under Evidence Rule 403. We conclude that neither of these reasons was sufficient to bar the testimony, and that the court erred in excluding Delacruz's testimony.

### 1. Civil Rule 37 [10]

■ The court's first rationale for excluding Delacruz's testimony was as a sanction for her non-responsiveness at discovery. Although the court did not explicitly cite Civil Rule 37 in its ruling, the principal source of sanctions for inadequate discovery responses is Civil Rule 37.[11] We conclude, however, that Civil Rule 37 cannot be the basis for excluding the testimony.

■ First, exclusion of testimony is not an appropriate or effective sanction under Civil Rule 37 where the recalcitrant witness is not a party.[12] (The appropriate sanction in these

9. The State is no longer a party. At trial, the State sought summary judgment on the basis of statutory immunity from the Wassermans' vicarious liability/respondeat superior claim. The Wassermans acknowledged at the trial that they were not pursuing a vicarious liability theory against the State. They alleged active negligence based on the State's purported failure to train and supervise troopers adequately. The court granted summary judgment on the vicarious liability claim, leaving the issue of training for trial. The State received a directed verdict on the training issue, and the Wassermans do not appeal it.

10. "Trial courts are vested 'with broad discretion as to the choice of sanction in a given situation.'" Rohweder v. Fleetwood Homes of Or., Inc., 767 P.2d 187, 190 (Alaska 1989) (quoting Hawes Firearms Co. v. Edwards, 634 P.2d 377, 378 (Alaska 1981) (imposing Rule 37 sanctions for discovery abuse)). "[S]anctions imposed under Civil Rule 37(b) are set aside only if the trial court has abused its discretion." Rohweder, 767 P.2d at 190 (citing Honda Motor Co. v. Salzman, 751 P.2d 489, 492 n. 7 (Alaska 1988), cert. dismissed, 487 U.S. 1260, 109 S.Ct. 20, 101 L.Ed.2d 972 (1988)).

11. Rule 37 allows a wide variety of sanctions. Glover v. Sager, 667 P.2d 1198, 1203–04 (Alaska 1983). One appropriate sanction is to preclude or strike a party witness's trial testimony. Alaska R. Civ. P. 37(b)(2)(B); State v. Guinn, 555 P.2d 530, 542 (Alaska 1976) (striking trial testimony of representative party witness for failure to comply with discovery order); Waicis v. Superior Court (Schwartz), 226 Cal.App.3d 283, 276 Cal.Rptr. 45, 48 (1990) (precluding trial testimony of a noncooperative deponent).

12. Civil Rule 37(b)(2) sanctions, such as an order precluding testimony, are not available against non-party witnesses. The sanction available against a non-party witness is contempt, under Civil Rule 37(b)(1). Moreover, sanctions under Rule 37(b) apply only after a witness has violated a court order compelling discovery. See Underwriters at Lloyd's London v. The Narrows, 846 P.2d 118, 120–22 (Alaska 1993); Bachner v. Pearson, 432 P.2d 525, 528, 532 (Alaska 1967) (Rabinowitz, J., dissenting) ("[T]he sanctions there provided do not come into play unless a party has refused to obey an order made under Rule 37(a)."). Because the defendants did not seek a court order under Rule 37(a)(2)(B) compelling

circumstances is an award of "reasonable expenses" under Civil Rule 37(a)(4)(A).) Second, there is no indication that the appellants, allegedly harmed by the exclusion, encouraged or caused the refusal of the non-party to answer questions at the deposition. In these circumstances, it would not be just to impose a sanction against a party that had done nothing wrong.

■ Because Delacruz was not a party, and because the defendants did not seek an order to compel her deposition testimony,[13] we conclude that the trial court abused its discretion in prohibiting her testimony as a Civil Rule 37 sanction for her refusal to cooperate at the deposition.

We do not mean to suggest that the trial court was without power to address the situation confronting it on the fourth day of trial when counsel for the plaintiffs announced his intent to call the previously recalcitrant witness.[14] Trial courts have the power to regulate the manner in which evidence is discovered and disclosed at trial. In extreme circumstances, a trial court may properly conclude that only exclusion of a non-party witness's testimony can redress the unfairness of the situation.[15]

In the instant case, however, there is no showing that exclusion is justifiable on these grounds. It was not established that the witness's initial non-cooperation was secured at the plaintiffs' urging. It appeared clear from the record that a mid-trial deposition was entirely feasible. In these circumstances, exclusion of Delacruz's testimony on the ground that it was necessary to avoid prejudice was error.

## 2. *Evidence Rule 403* [16]

■ The court's reasons for excluding Delacruz's testimony included these statements: "[I]t's potentially cumulative," "[w]e've got many, many fact witnesses," and "there are so many witnesses on the subject." These statements suggest exclusion under Evidence Rule 403 for "undue delay, waste of time, or needless presentation of cumulative evidence."

The court made its ruling without knowledge of the contents of Delacruz's sealed statement. Our knowledge of that statement is the most important basis for the following analysis and our consequent determination that Delacruz's testimony should have been admitted.

---

Delacruz to respond, the court could not impose any Rule 37(b) sanctions.

The rationale for requiring a prior court order is that Rule 37(b) sanctions may be harsh. A court must afford a witness sufficient opportunity to consider whether he or she will respond, and to realize the seriousness of failure to respond, before it imposes sanctions. Also, a court must determine whether a witness has sound basis, such as privilege or the Fifth Amendment, for refusal to respond to a discovery request before it can impose Rule 37 sanctions. *Societe Internationale v. Rogers*, 357 U.S. 197, 210–12, 78 S.Ct. 1087, 1094–96, 2 L.Ed.2d 1255 (1958). The most appropriate time for that determination is before trial, at a hearing on a motion to compel discovery.

13. When she stated at her deposition that she would not answer questions without a protective order, the defendants could have sought to compel Delacruz to testify by filing a motion under Rule 37(a)(2)(B). They could have also brought a motion in limine to exclude Delacruz's testimony at trial. They did neither.

14. The Wassermans attempted to depose Delacruz. She declined to testify absent a protective order. The Wassermans shortly thereafter

moved for a protective order. The court denied the motion. Trial commenced not long thereafter. On the fourth day of trial, plaintiffs' counsel announced that Delacruz had changed her mind and was now prepared to testify. One could conclude from these circumstances that the trial court correctly found that there had not been "equal access" to Delacruz.

15. For example, where the record is clear that a party has induced the non-party witness's non-cooperation with discovery, and the exigencies of the trial schedule would not permit a mid-trial deposition, exclusion may well be appropriate. Exclusion in these circumstances would be imposed not to sanction the witness nor pursuant to Civil Rule 37, but to prevent undue prejudice to the party against whom the testimony was offered and who had no opportunity to prepare for the testimony.

16. Rule 403 gives a trial court discretion to exclude evidence. *Fairbanks N. Star Borough v. Kandik Constr., Inc. & Assoc.*, 795 P.2d 793, 801 (Alaska 1990), *vacated in part on other grounds*, 823 P.2d 632 (Alaska 1991). This court reviews Rule 403 decisions under the abuse of discretion standard. *Williams v. Utility Equip., Inc.*, 837 P.2d 1112, 1116 (Alaska 1992).

Although the trial court stated that Delacruz was "not the key witness," her statement reveals that she could be the most important non-party witness. Seven non-party fact witnesses who were in or near the Safeway testified: Martha Roth, Arlene Abalahin, Renee Dewberry, Joy Morrison, Tammy Pruitt, Vincent James Valenza and Roger Hanson. Most of the non-party witnesses were quite distant from the scuffle and stated that their perceptions of it were limited.[17] In comparison, Delacruz states that she was 10–15 feet away. With the possible exception of Roger Hanson, this would make her the closest non-party witness and would lend significance to what she observed.

While the trial court said that there was "not that large of a diversity" between the parties' accounts of the facts, several important facts are disputed: whether the police officers were identifiable as peace officers, whether an officer held Keith Wasserman in a choke hold, and what the officers told Wasserman before they seized him.

17. Roth "wasn't in a position to hear anything" other than shouting, and didn't see most of what transpired. Abalahin implied that she was a substantial distance from the events when she said she could hear Keith Wasserman yelling "all the way from the checkstand." Dewberry said she was about 70 feet away. Morrison was roughly 100 feet away. Pruitt's testimony was accepted by stipulation, so she did not testify on the disputed facts.

18. Delacruz's statement that the officers wore "dark clothing" and that she noticed no badges or other identifying marks is the only non-party witness's statement supporting the Wassermans' claim that the officers did not identify themselves to the Wassermans as peace officers.

19. There was substantial dispute at the trial over whether Roberts applied a choke hold to Wasserman. One witness strongly corroborated Roberts' account that he held Wasserman around the chest. Four witnesses, including two police officers, testified that Wasserman was held around his neck or between his chin and shoulders, though some said the hold was *not* a choke hold. The Fairbanks Police Department's internal affairs control officer concluded that Wasserman was not held in a choke hold. The examining physician at the hospital found that Wasserman's neck abrasions were consistent with the conclusion that he was held in a choke hold, but that several other typical indications of a choke hold were not present.

On each of these points, Delacruz had testimony to offer that was highly favorable to plaintiffs. Delacruz stated that the officers were not identifiable as peace officers,[18] that one of them held Wasserman in what was apparently a choke hold,[19] and that none of them asked Wasserman for identification[20] or told him why they were detaining him.[21] Her testimony, if believed, would strongly have supported the plaintiffs' theory of the case.

■ Evidence properly excludable as "cumulative" falls into two categories. One is evidence supporting an uncontested or established fact. *United States v. Hearst*, 563 F.2d 1331, 1350 (9th Cir.1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *Sloan v. Atlantic Richfield Co.*, 541 P.2d 717, 722 n. 7 (Alaska 1975), *modified on other grounds*, 552 P.2d 157 (Alaska 1976). The second is evidence repeating a point made by previous evidence.[22] *United States v. Stirling*, 571 F.2d 708, 736 (2d Cir.1978), *cert. denied*, 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978); *Williams v. Utility*

Delacruz's affidavit, on the other hand, says that a police officer lifted Wasserman off the floor while holding him by his neck, in what appears to have been a choke hold.

20. Wasserman stated that the police did not ask him for identification at the initial apprehension. The defendants disagreed. Delacruz supported Wasserman: "at no time in my hearing, did [any officer] ask Mr. Wasserman for his identification."

21. Wasserman stated that the police did not initially tell him why they stopped him. The officers stated that Wasserman was initially told that he resembled a federal fugitive. The few statements of non-party witnesses on these issues support the defendants weakly, at best. On the other hand, Delacruz's statement that "at no time in my hearing, did [any officer] ... explain to Mr. Wasserman why they were detaining him" is potentially very important to the plaintiff.

22. Evidence falling within this second category should be excluded with caution, for repetition of the same evidence on a disputed point by several witnesses is often persuasive in establishing the truth of that evidence. Evidence should only be excluded on a disputed point as cumulative if the evidence on the point "is already so full that more witnesses to the same point could not be reasonably expected to be additionally persuasive." 6 John H. Wigmore, *Evidence* § 1908, at 760 (Chadbourne Rev.1976).

*Equip., Inc.,* 837 P.2d 1112, 1115–16 (Alaska 1992); *Schneider v. Cessna Aircraft Co.,* 150 Ariz. 153, 722 P.2d 321, 331 (App.1985).

■ Delacruz's testimony is clearly not cumulative evidence of the first sort; the Safeway events are disputed. It is not the second, repetitious, sort of cumulative evidence; Delacruz is the only non-party witness who states that the police were not identifiable as police officers, and did not disclose the reason they stopped Keith Wasserman. Moreover, her status as perhaps the closest non-party witness makes exclusion of her testimony questionable. *See Zaken v. Boerer,* 964 F.2d 1319, 1323 (2d Cir.1992) (rejecting exclusion of testimony as cumulative where all other comparable witnesses were parties or had also sued defendant), *cert. denied,* 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 375 (1992); *see also Kobos By and Through Kobos v. Everts,* 768 P.2d 534, 545–46 (Wyo. 1989).

■ While the defense could identify reasons to discredit Delacruz's testimony,[23] her credibility should not affect whether her testimony is inadmissible as cumulative. The Wassermans' counsel came close to inviting this ruling, by calling on Delacruz after several fact witnesses who provided little or no support for their account and by describing her testimony at one point as "more of the same, perhaps." However, a witness's account of disputed facts cannot be considered cumulative on the basis that the court has heard several versions of the facts that *differ substantially* from the excluded witness's version.

The court's opinion could be read to suggest other Rule 403 rationales: "undue delay" and "waste of time." They do not apply. These rationales generally serve to contain a peripheral but potentially time-consuming issue. *See Fairbanks N. Star Borough v. Kandik Const.,* 795 P.2d 793, 801 (Alaska 1990) ("It was not necessary for the court to suffer a trial within a trial on this minor issue."); *Alaska Northern Dev., Inc. v. Alyeska Pipeline Serv. Co.,* 666 P.2d 33, 42 (Alaska 1983) ("to prevent the 'sideshow [from] swallow[ing] up the circus'") (alterations in original), *cert. denied,* 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984). Exclusion on these grounds of evidence pertaining to the central issue at trial is rarely within the trial court's discretion. *See Shad v. Dean Witter Reynolds, Inc.,* 799 F.2d 525, 530 (9th Cir.1986) (rejecting exclusion of expert testimony essential to plaintiffs' case); *Denison v. Anchorage,* 630 P.2d 1001, 1003 (Alaska App.1981) (rejecting exclusion as "undue delay or waste of time" of circumstantial evidence of defendant's sobriety in drunk driving trial); 29 Am.Jur.2d *Evidence* § 353 at 386 (1994) ("[E]vidence should not be excluded on the ground of delay or waste of time when the proffered evidence is of central importance to the case."). Because Delacruz's testimony goes to the central issue of the case, it is not excludable for reasons of undue delay or waste of time.

As the rationales of cumulative evidence, undue delay, or waste of time are all inapplicable, we find that the trial court abused its discretion in excluding Delacruz's evidence under Evidence Rule 403.

### 3. *Remedies*

Although it was error to exclude the testimony of Delores Delacruz on grounds of either Civil Rule 37 or Evidence Rule 403, it does not necessarily follow that a new trial must be granted. The determination of the context in which the improperly excluded evidence should be heard will be left, in the first instance, to the trial court. After giving the parties the opportunity to be heard, the trial court should decide whether to reopen the evidence solely to entertain the testimony of Delores Delacruz, to reopen to entertain her testimony and any other evidence within the ambit of her testimony, (allowing, for

---

**23.** These include that Delacruz and her family had a history of substantial contacts with the Fairbanks Police Department, and she believed she had been subject to harassment by the department. This evidence could support a finding that she is biased against the Fairbanks Police Department. Moreover, Delacruz had a strong emotional reaction to the Safeway scuffle which left her "shaken," and it could have been argued that she was a less reliable witness than others. Finally, her testimony disagreed with that of nearly every other non-party witness with regard to whether the officers were in uniform.

example, impeachment and rebuttal evidence), or to hold a new trial.[24]

### B. The Trial Court Correctly Denied the Wassermans' Request for Disqualification.[25]

The Wassermans' second and third points on appeal concern their attempt to disqualify Judge Beistline. They argue that Judge Beistline should have granted their motion for a new trial because his presiding over their case and his non-disclosure of his prior legal work for the defendant City of Fairbanks created an "appearance of partiality." They also claim that Judge Beistline erred by considering information that was not in evidence when he denied the motion for a new trial.

Judge Beistline denied the Wassermans' disqualification motion because he found that it was both untimely and lacked merit. Judge Hodges affirmed the ruling on its merits. We affirm the lower court's rulings on the merits as being soundly within the scope of judicial discretion.[26]

Two bodies of law provide standards for disqualification of a judge for cause: AS 22.20.020(a) and the Alaska Code of Judicial Conduct, Canon 3.C.[27] The two bodies of law are "related, but somewhat different." *Alaska Trams Corp. v. Alaska Elec. Light & Power*, 743 P.2d 350, 353 n. 7 (Alaska 1987), cert. denied, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). The canon and the statute set different standards and apply in different situations. *See Feichtinger v. State*, 779 P.2d 344, 347 n. 4 (Alaska App.1989) (distinguishing Canon 3 and AS 22.20.020 by noting that a judge may recuse himself or herself under the canon, but only the statute allows one judge to disqualify another judge). However, we have relied upon the canon to interpret the statute, in particular finding that because of the canon, AS 22.20.020(a)(9) includes an "appearance of impartiality." *Perotti v. State*, 806 P.2d 325, 327 (Alaska App.1991); *Amidon v. State*, 604 P.2d 575, 577–78 (Alaska 1979).

Prior representation by a judge of the state or a municipality is not enumerated among grounds for disqualification in the statute or the canon. Alaska Statute 22.20.020 compels disqualification of a judge who counseled one party as an attorney within the last two years, as Judge Beistline did for the City of Fairbanks, but not where the former client is "the state or a municipality

---

24. In the event that the trial court decides that a new trial should be granted, it need not revisit the question of bench or jury trial. That issue was resolved by the stipulation of the parties before the first trial.

25. The Wassermans moved for Judge Beistline to disqualify himself after the trial in the form of a "motion for new trial." Rejection of a motion to disqualify is reviewed under the abuse of discretion standard. *Mustafoski v. State*, 867 P.2d 824, 832 (Alaska App.1994). A motion for new trial is also reviewed under the abuse of discretion standard. *Richey v. Oen*, 824 P.2d 1371, 1375 (Alaska 1992); *Babinec v. Yabuki*, 799 P.2d 1325, 1327 (Alaska 1990).

26. On the question of timeliness, present Alaska law applies no timeliness requirement on motions to disqualify a judge for cause. Alaska case law concerning a comparable arbitration situation, convincing rulings from other jurisdictions, and common sense all suggest that a motion to disqualify a judge for cause could be rejected as untimely where allegations of bias are not raised until after an unfavorable decision. *Alaska State Hous. Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1248–49 (Alaska 1978); *State v. McCall*, 160 Ariz. 119, 770 P.2d 1165, 1176 (1989), cert. de-

nied, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990).

However, we decline to rely on the superior court's finding of untimeliness. This finding was based upon judicial notice of facts (such as the knowledge of the Wassermans' attorney, William Satterberg, based on his community involvement and association with former Hughes, Thorsness associates) that were *not* generally known but were within Judge Beistline's personal knowledge or belief. A fact subject to judicial notice is one "not subject to reasonable dispute" because it is either "generally known within this state" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Alaska R. Evid. 201. *See also State v. Grogan*, 628 P.2d 570, 573 n. 4 (Alaska 1981) (trial court judge "may have improperly taken judicial notice of facts within his personal knowledge").

27. The Wassermans raised their initial claim under the canons, not under AS 22.20.020. However, they later stated their claims in terms of the statute, and the defendants and judges responded in terms of both sets of law. We analyze this issue with regard to both the statute and the canons.

of the state." AS 22.20.020(a)(5). Reasons for this exception are that representing the state or a municipality, unlike representation of private clients, does not lead to a disqualifying loyalty, *Mustafoski v. State*, 867 P.2d 824, 835 (Alaska App.1994), and that many new judges, including all former district attorneys, assistant attorneys general, and municipal attorneys, would have to recuse themselves from "a wide range of proceedings both criminal and civil." *Keel v. State*, 552 P.2d 155, 157 (Alaska 1976).

This leaves the more vague "appearance of partiality" claim based on AS 22.20.020(a)(9) and Canon 3.C(1). Judge Beistline rejected that claim, and Judge Hodges found his decision not to be an abuse of discretion. This court is deferential to judges' decisions regarding the "appearance of partiality." *Amidon*, 604 P.2d at 577. Although the language of AS 22.20.020(a)(9) relies on a judge's subjective decision, review applies an objective standard based on a fair-minded person. *Mustafoski*, 867 P.2d 824, 831 n. 3.

A fair-minded party would rationally conclude that Judge Beistline did not breach the appearance of impartiality, either by presiding over the case or by failing to disclose his prior representation. Two principal reasons support this conclusion: remaining on this case after working for the municipality was allowed by an explicit statutory exception, and the governmental interests he had represented differ from the interests held by the parties in this suit. We therefore affirm the superior court's ruling that Judge Beistline did not need to disqualify himself or to disclose his prior legal work on behalf of the City of Fairbanks.

## C. *The Trial Court Did Not Err in Admitting Keith Wasserman's Psychiatric Records into Evidence.*

The Wassermans' next argument contends that the court should have excluded Wasser-

man's psychiatric records. Their argument on this subject cites no authority and fails to provide a legal theory under which the records should have been excluded. This argument is therefore considered waived.[28]

## D. *The Trial Court Did Not Err in Excluding the Deposition Testimony of Officers Steinnerd and Bartholomew.*

The Wassermans contend that the trial court excluded the deposition testimony of Officers Steinnerd and Bartholomew, which the Wassermans wanted to introduce on rebuttal. The Wassermans do not provide a record citation for the court's alleged exclusion of this testimony, however, and the transcript demonstrates that the court in fact admitted the pages of the Bartholomew transcript that the Wassermans offered. The transcript does not indicate that the Wassermans' counsel requested the admission of transcript testimony from Officer Steinnerd.

The Wassermans did offer deposition testimony of Trooper Manns, who was originally a defendant but was later dropped from the case. The trial court excluded this testimony as cumulative. The Wassermans do not appeal the exclusion of Trooper Manns' deposition testimony. Assuming that the Wassermans meant to appeal the exclusion of Manns' testimony, their claim lacks merit. Their arguments attempt to demonstrate that the proffered deposition testimony was relevant and not hearsay. The court excluded Manns' testimony not because it was irrelevant or hearsay, but because, in the court's view, it was cumulative. The Wassermans have made no argument in opposition to that ruling, and there is no basis to conclude that it was an abuse of discretion. For these reasons, we reject the Wassermans' arguments regarding the admissibility of deposition testimony.

---

**28.** This court has long held that "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *See, e.g., Adamson v. University of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991); *see also Petersen v. Mutual Life Ins. Co.*, 803 P.2d 406, 411 n. 8 (Alaska 1990) (holding that argument was waived where appellant mentioned argument in main brief but failed to "advance any *legal argument* as to why the court erred").

### E. The Trial Court's Decision Was Not "Against the Substantial Weight of the Evidence."[29]

■ Finally, the Wassermans claim that "[w]ith the exception of Trooper Roberts, and Officer Steinnerd, everyone at the scene saw Trooper Roberts's arm go around Keith Wasserman's neck." From this premise the Wassermans argue that the evidence did not allow the trial court to make the following findings of fact:

[Trooper] Roberts grasped Wasserman around the upper shoulders to obtain control. He did not apply a "choke hold," although Wasserman's neck was likely impacted by Roberts' arms in the scuffle. Roberts' contact with Wasserman cannot be classified as deadly force.

The Wassermans ask this court to find liability "on the part of Trooper Roberts if no one else." They claim that since the other officers were "part and parcel to the attack on Wasserman," they should also be held liable by this court.

The flaw in this argument is that it rests on a false premise. It is simply not true that with the exception of two officers, "everyone at the scene saw Trooper Roberts's arm go around Keith Wasserman's neck." Roger Hanson's testimony corroborated the testimony of Trooper Roberts, who said that he did not apply a choke hold to Wasserman. Hanson, the produce manager at Safeway, testified that Roberts wrapped his arms around Wasserman's chest. Doctor Eric Stirling, who examined Wasserman in the Fairbanks Memorial Hospital emergency room on the morning after the Safeway incident, also contradicted Wasserman's choke hold allegation. Dr. Stirling had experience with injuries suffered during arrest struggles, and was familiar with the medical symptoms that would result from a choke hold. His notes indicate no evidence of several of these symptoms.

■ This testimony provides evidentiary support for the trial court's factual finding that

[t]here was conflicting testimony as to whether Roberts' arm or arms were around Wasserman's neck or shoulders. Several witnesses saw arms near Wasserman's neck while others believed them to be around his shoulders or upper body. Medical evaluation did not substantiate a choke hold....

In sum, it is not true, as the Wassermans imply, that there was nearly unanimous testimony that Trooper Roberts grabbed Wasserman around the neck. In fact, no percipient witness besides Wasserman clearly testified to the existence of a choke hold. The Wassermans fail to cite any passage of the record in support of their assertion that "everyone at the scene" saw Roberts put his arm around Wasserman's neck. Given the conflicting testimony on this issue, it cannot be said that the trial court's factual findings regarding Trooper Roberts' actions were clearly erroneous. We therefore reject the Wassermans' final argument on appeal.[30]

## IV. CONCLUSION

The trial court correctly denied the Wassermans' request for disqualification, correctly decided questions concerning the admission of deposition testimony and psychiatric records, and rendered a decision that was not against the weight of the evidence. The trial court did err in refusing to admit the testimony of Delores Delacruz. On remand, after briefing by the parties, the trial court should determine the most appropriate procedural remedy.

We therefore AFFIRM the lower court's ruling in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

MOORE, J., not participating.

---

**29.** This court reviews the superior court's factual findings under the clearly erroneous standard. *Barber v. Barber,* 837 P.2d 714, 716 n. 2 (Alaska 1992).

**30.** This ruling addresses the evidence which was actually admitted at the trial. It does not ad-

dress the proposed testimony of Delores Delacruz, which we have found was erroneously excluded. Upon remand, of course, the trial court will consider the Delacruz testimony in deciding this matter.