**Keith WASSERMAN and Kristi Wasserman, Appellants,**

v.

**Hayden BARTHOLOMEW, Ken Steinnerd, City of Fairbanks, John Roberts, and State of Alaska, Appellees.**

No. S–8238.

Supreme Court of Alaska.

Sept. 17, 1999.

Rehearing Denied Oct. 12, 1999.

---

William R. Satterberg, Jr. and James E. McLain, Law Offices of William R. Satterberg, Jr., Fairbanks, for Appellants.

Daniel E. Winfree, Winfree Law Office, Fairbanks, for Appellees Hayden Bartholomew, Ken Steinnerd, and City of Fairbanks.

Randy M. Olsen, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellees John Roberts and State of Alaska.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

### I. INTRODUCTION

Keith Wasserman sued the City of Fairbanks, the State of Alaska, and three peace officers, claiming that the officers used excessive force when they mistakenly apprehended him and wrestled him to the ground in a grocery store. Following a bench trial, the superior court ruled for the defendants. After we remanded the case to allow testimony from an additional witness, the superior court reaffirmed its findings. Wasserman appeals, claiming that the superior court erred by prohibiting him from calling two officers as corroborative witnesses. Because we conclude that the officers' testimony was highly material and not cumulative and that Wasserman made a sufficient offer of proof, we vacate the judgment against Wasserman and remand to allow the officers to testify.

### II. FACTS AND PROCEEDINGS

On October 19, 1990, law enforcement officials in Fairbanks were pursuing a fleeing convicted felon, John Palmer. Various members of the Fairbanks Police Department, Alaska State Troopers, and Fairbanks International Airport Security were assisting in the pursuit. The officers had reason to believe that Palmer had exited a taxicab and fled into a nearby Safeway store. State Trooper John Roberts, accompanied by a trainee, Jeffrey Manns, entered the store. Fairbanks police officers Hayden Bartholomew and Ken Steinnerd also entered the store after speaking with a witness outside.

Meanwhile, Keith Wasserman was shopping at the Safeway store. At the check-out stand, he asked a Safeway employee about the location of a sale item. Wasserman left his son Levi at the cash register and headed toward the appropriate section of the store. Wasserman's physical appearance was apparently similar to the rough description of Palmer provided to the officers.

At this point Wasserman's account of the facts diverges somewhat from the defendants' version. Wasserman testified to hearing someone yell "Stop!" and seeing "dark clad men" come toward him. He claimed that the police did not initially identify themselves or explain their purpose in detaining him and that he did not recognize them as officers. He said someone grabbed him by the jacket and told him to put his hands behind his back. He jerked away and asked "What for?" The officer told him to "shut up" and to put his hands behind his back; Wasserman again refused, exclaiming, "Wait a minute, I've got rights." At that moment, someone—later identified as State Trooper John Roberts—wrapped an arm around Wasserman's neck in what several of plaintiffs' witnesses described as a choke hold. One of the officers then kicked Wasserman's feet out from under him; Wasserman, along with several officers, fell to the floor. Wasserman stated that he could not breathe and that

someone told him, "Put your hands behind your back and we'll let you breathe." After Wasserman complied, an officer handcuffed him and pulled him up to his feet. Shortly afterward, the police discovered that they had the wrong man and released Wasserman.

In contrast, Trooper Roberts testified that the men were in full uniform and unmistakably police officers. The defense offered the deposition testimony of Roger Hanson, the Safeway produce manager, who claimed that the officers had immediately asked Wasserman for identification. According to Trooper Roberts, Wasserman neither produced identification nor said that he was not the man the officers were seeking. Both Roberts and Hanson denied that Roberts had used a "choke hold" on Wasserman; instead, they testified that Roberts approached Wasserman from behind and threw his arms around Wasserman's shoulders or chest. Roberts lost his balance, and next remembers the officers and Wasserman "all going to the floor." Because Wasserman continued to struggle, an officer handcuffed him. The officers then pulled Wasserman to his feet, learned that he was not the fugitive, and released him.

Wasserman sued the City of Fairbanks, two Fairbanks police officers, the State of Alaska, and two state troopers,[1] claiming that the officers' actions constituted assault, battery, negligent infliction of harm, and unreasonable use of force. Wasserman's wife Kristi sued for loss of consortium and "emotional distress."

To support his claims, Wasserman sought the testimony of Delores Delacruz, an eyewitness to the incident. Delacruz stated in a pre-trial deposition that she would not answer questions without a protective order precluding the police from contacting her and her children. The trial court refused to issue the order, and Delacruz refused to be deposed. Later, at trial, the court refused to allow Wasserman to call Delacruz to testify. Instead, it requested that Wasserman's attorney file a sealed affidavit from Delacruz detailing her version of events "for purposes of the record." Delacruz stated in the affidavit that an officer did place Wasserman in a neck hold; that the officers' attire did not identify them as police; and that the officers never asked Wasserman for identification.

On January 26, 1993, after a bench trial, the trial court entered judgment in favor of the defendants, concluding that their actions were reasonable. Ten days later, the Wassermans moved for a new trial based on the material found in Delacruz's affidavit. The trial court denied the motion, stating that the material in the affidavit was merely cumulative. Wasserman appealed.

In September 1996, in *Wasserman v. Bartholomew (Wasserman I )*,[2] we remanded the case to allow the trial court to hear Delacruz's testimony.[3] The superior court conducted supplemental proceedings in May 1997. Delacruz's testimony essentially mirrored her sealed statement. The court denied Wasserman's request to call Officer Bartholomew and Trooper Manns as witnesses after Delacruz's testimony in an effort to bolster her credibility. To rebut Delacruz's testimony, the State again presented the testimony of Roger Hanson. Hanson's account corroborated Officer Roberts's version of events.[4]

After hearing Delacruz and Hanson's testimony, Judge Beistline again concluded that Wasserman had not proven by a preponderance of the evidence that the officers' actions were negligent. Wasserman appeals the superior court's exclusion of Bartholomew and Manns's testimony.

## III. DISCUSSION

### A. Standard of Review

We review a trial court's exclusion of testimony, along with other such evidentiary decisions, for an abuse of discretion.[5] We

1. In the original complaint, Fairbanks police officer Jeffrey Manns was a named defendant. Wasserman later stipulated to dismissal of the claims against Manns.

2. 923 P.2d 806 (Alaska 1996).

3. *See id.* at 814, 817.

4. *See id.* at 809.

5. *See Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994); *Osborne v. State,* 623 P.2d 784, 789 (Alaska 1981).

also apply an abuse of discretion standard to trial court rulings on whether evidence is legitimate rebuttal evidence.[6]  We will find an abuse of discretion only when we are left with a definite and firm conviction after reviewing the whole record that the trial court erred in its ruling.[7]

B.  *The Trial Court Erred by Excluding the Testimony of Officer Bartholomew and Trooper Manns from the Supplemental Proceedings.*[8]

1.  *Once the trial court allowed Delacruz to be impeached, it should have allowed Wasserman to call corroborating witnesses.*

■ In *Wasserman I* we noted that "[t]he determination of the context in which the improperly excluded evidence should be heard will be left, in the first instance, to the trial court."[9]  We essentially gave the superior court its choice among three options:

> After giving the parties the opportunity to be heard, the trial court should decide whether to reopen the evidence solely to entertain the testimony of Delores Delacruz, to reopen to entertain her testimony and any other evidence within the ambit of her testimony, (allowing, for example, impeachment and rebuttal evidence), or to hold a new trial.[10]

On remand, the trial judge chose the second option; it allowed the State to call Roger Hanson, the Safeway produce manager, as a witness to impeach Delacruz's account of events.  Hanson's account corroborated Officer Roberts's version of events.[11]  The State also insinuated during Delacruz's cross-examination that she was biased against the police.  Notwithstanding the attacks on Dela-

cruz's credibility in rebuttal and cross-examination, the superior court denied Wasserman's request to call eyewitnesses who could corroborate Delacruz's story.

One could reasonably read our decision in *Wasserman I* as giving the superior court the discretion to limit the post-remand proceedings to Delacruz's testimony.[12]  But once the court allowed the State to attack Delacruz's credibility both through cross-examination questions about bias and through the "impeachment-type rebuttal"[13] testimony of Roger Hanson, it was an abuse of discretion to disallow admissible evidence supporting Delacruz's testimony.  *McCormick on Evidence* describes as a "truism" the rule that "when there has been evidence of impeaching facts the proponent may bring contradictory evidence asserting the untruth of the alleged impeaching facts.  Such a denial is always relevant and generally allowable."[14]  Similarly, Alaska Rule of Evidence 607(b) provides that "[e]vidence proffered by any party to support the credibility of a witness may be admitted to meet an attack on the witness' credibility."  By admitting such impeachment evidence, the court was obligated to allow Wasserman to support Delacruz's credibility through the testimony of eyewitnesses who could corroborate Delacruz's account.

2.  *The officers' testimony was not cumulative and would have corroborated Delacruz's account.*

■ The trial court excluded the officers' testimony on the ground that it was cumulative.  We disagree.  As we explained in *Wasserman I*, evidence properly excludable as "cumulative" falls into two categories: evidence supporting an uncontested or established fact and evidence repeating a point

---

6.  *See Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1277 (Alaska 1988).

7.  *See Wright v. Shorten*, 964 P.2d 441, 443 (Alaska 1998).

8.  Wasserman also claims that the trial court's post-remand findings were clearly erroneous and that the court "essentially discarded" Delacruz's testimony.  Because we are remanding the case for further testimony and factual findings, we do not address this argument.

9.  923 P.2d at 814.

10.  *Id.* at 814–15.

11.  *See id.* at 809.

12.  *See id.* at 814–15.

13.  *See Van Horn Lodge, Inc. v. Ahearn*, 596 P.2d 1159, 1163 (Alaska 1979).

14.  I *McCormick on Evidence* § 47 (John W. Strong ed., 5th ed.1992).

made by previous evidence.[15] Given that the trial court ultimately did not believe Delacruz's account, her testimony was hardly uncontested. Thus, any testimony that would corroborate her account would not fall into the first category of cumulative evidence.

■ The officers' testimony also does not fall into the category of evidence repeating a point made by previous testimony. In *Wasserman I*, we warned that courts should be wary of excluding otherwise relevant evidence on this ground:

> [R]epetition of the same evidence on a disputed point by several witnesses is often persuasive in establishing the truth of that evidence. Evidence should only be excluded on a disputed point as cumulative if the evidence on the point "is already so full that more witnesses to the same point could not be reasonably expected to be additionally persuasive."[16]

Here, the trial court found Delacruz's testimony to be unpersuasive for two reasons. First, the court found that it was "inconsistent with much of the other evidence presented" and was "contradicted by that of Roger Hans[o]n and others." Second, the court concluded that Delacruz's probable bias against the police had colored her testimony. Logically, then, if the testimony of either Trooper Manns or Officer Bartholomew would have provided support for Delacruz's account that was not clouded by anti-police bias, it would have been "additionally persuasive" and not cumulative.

■ An examination of the record and of the officers' depositions reveals that the testimony of Manns and Bartholomew would indeed have been consistent with Delacruz's account of events. We identified several disputed issues in *Wasserman I* on which Delacruz's testimony would be relevant; specifically, "whether the police officers were identifiable as peace officers, whether an officer held Keith Wasserman in a choke hold, and what the officers told Wasserman before they seized him."[17] Delacruz testi-

fied in the post-remand proceeding that the officers were wearing black clothes that were not obviously police uniforms, that the officers did not identify themselves to Wasserman, and that Trooper Roberts had Wasserman in a neck hold.

Both Officer Bartholomew and Trooper Manns's descriptions of the incident in their depositions do corroborate certain aspects of Delacruz's version of events. For example, Bartholomew stated that, instead of a full police uniform, he was wearing a black sweater with a "little emblem badge sewn on it." He also stated that none of the officers indicated to Wasserman that he was under arrest and that Trooper Roberts did indeed put his hands around Wasserman's neck. Manns similarly testified in his deposition that no one told Wasserman he was under arrest and that Trooper Roberts grabbed Wasserman from behind and put his arms "between the chin and the shoulders." Manns's testimony is particularly crucial given that, with the exceptions of Hanson and Delacruz, he was the closest non-party eyewitness to the scene.[18]

The officers' testimony directly contradicts Roger Hanson's testimony in the post-remand trial that "[t]he police came and asked for identification, and said that they were placing [Wasserman] under arrest." Given that the trial court relied on Hanson's testimony in discounting Delacruz's version of events, the officers' testimony would not have been merely cumulative.

■ The City of Fairbanks argues that Wasserman failed to prove that the exclusion of the officers' testimony was not harmless. Alaska Civil Rule 61 precludes disturbing a judgment because of an erroneous evidentiary ruling unless the ruling "appears to the court inconsistent with substantial justice." Here, the trial court based its dismissal of Delacruz's testimony in part on her anti-police bias and on inconsistencies between her testimony and that of Roger Hanson and other witnesses. Given that the officers' testimony would have contradicted Hanson's ac-

---

15. *See Wasserman I,* 923 P.2d at 813.

16. *Id.* at 813 n. 22 (quoting 6 John Wigmore, *Evidence* § 1908 (Chadbourne Rev.1976)).

17. *Id.* at 813.

18. *See id.*

count and would have been free of bias against the police, the admission of the testimony could very well have affected the trial court's findings. We therefore conclude that the trial court's error in excluding the testimony was not harmless.

3. *Wasserman made a sufficient offer of proof with respect to Officer Bartholomew's and Trooper Mann's testimony.*

The City of Fairbanks argues in its supplemental briefing that Wasserman failed to make a sufficient offer of proof that Officer Bartholomew and Trooper Manns's testimony would corroborate Delacruz's testimony. We disagree. A party must generally make an offer of proof to preserve error based on a trial court's ruling excluding evidence.[19] The party must show that "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."[20] We believe Wasserman made this showing with respect to the officers' testimony.

Wasserman made the substance of Bartholomew and Manns's proposed testimony known to the court on several occasions. At the original trial, Wasserman's expert on police tactics referred in his testimony to portions of both officers' depositions in which they described Trooper Roberts's alleged neck hold on Wasserman. Specifically, the expert noted Bartholomew's statement that Roberts "used a choke hold"[21] and explained his reliance on Manns's deposition in forming his professional opinion:

> Trooper Manns, who was with Trooper Roberts, says that [Roberts's] arm was between [Wasserman's] shoulders and his chin, and the only thing that's there is a neck, so ... That's the conclusion I reached: that he'd—was using a choke hold.

And in the post-remand proceedings, Wasserman's attorney requested that the court allow the officers to testify after Ms. Delacruz:

> [T]he offer I would make, would be to call both Manns and Bartholomew ... to testify, because if there is any implication that Mrs. Delacruz has been less than honest or biased, I would, by way of offer of proof, [state] that *Mr. Manns and Mr. Bartholomew will testify the same thing happened ... that they saw.*

(Emphasis added.) The fact that the superior court knew enough about the content of the officers' testimony to label it cumulative suggests that the court understood the substance of the testimony.

Additionally, with respect to Trooper Manns, the State actually called Manns as a witness at trial. Manns stated that he was about six feet from the officers and that he could hear what was being said and see the altercation. This testimony, albeit limited, alerted the court to the substance of Manns's testimony concerning Wasserman's interactions with the officers. And after notifying the court in the first trial that he might want to call Manns as a rebuttal witness, Wasserman's attorney, William Satterberg, explained the relevance of Manns's testimony:

> *Satterberg:* I may want to call Trooper Manns as my witness on rebuttal, [since] I have been so limited by the scope [of] his testimony by the court and Mr. Olsen. So, I may have to call him and ask some questions.
>
> *Court:* Well, I don't—let's address that specifically. Because you were not limited to the extent you didn't get to make your points.
>
> *Satterberg:* The only point that I would've brought out as well, Your Honor, which has been brought out in testimony previously in the case, was how Manns saw Trooper Roberts take down—take down Mr. Wasserman.... [R]ecognizing that they're apparently call[ing] Mr. Hanson and Mr. McCormick[,] ... I may have to

---

**19.** *See Landers v. Municipality of Anchorage,* 915 P.2d 614, 616 (Alaska 1996).

**20.** Alaska R. Evid. 103(a)(2).

**21.** The superior court eventually admitted into evidence the portion of Bartholomew's deposition in which he describes the so-called "choke hold."

ask Trooper Manns[,] ... "What did you see happen?"

The court asked Satterberg whether Manns's deposition addressed new facts and advised him to offer only portions of Manns's deposition. But Satterberg insisted that Manns's testimony "does address, again, the issue of the neck hold and ... goes to counter what was testified to by Trooper Roberts." The court denied the request as cumulative. The court noted to Satterberg that "[W]e know your offer of proof, because it's pages 42, 43 and 44 of Trooper Manns'[s] deposition." That portion of Manns's deposition discusses Roberts's grabbing Wasserman.

After reviewing the record, we conclude that Wasserman's representations as to the content of the officers' testimony were more than sufficient to constitute a proper offer of proof for both Office Bartholomew and Trooper Manns's testimony.

### IV. CONCLUSION

Because we conclude that the officers' testimony would have corroborated Delacruz's account of events, that the officers' testimony would not have been cumulative, and that Wasserman made a sufficient offer of proof, we VACATE the superior court's judgment against Wasserman and REMAND to allow the court to hear the testimony of Officer Bartholomew and Trooper Manns. Although the court has discretion to determine the scope of the proceedings, the court should admit whatever impeachment, rebuttal, or supporting evidence is appropriate or necessary based on the officers' testimony.