Leslie WILLIAMS, Appellant,

v.

UTILITY EQUIPMENT, INC., Appellee.

Nos. S–4280, S–4335.

Supreme Court of Alaska.

Aug. 14, 1992.

Steven D. Smith, Anchorage, and George Vogt, Kodiak, for appellant.

Joan M. Unger, Richmond & Quinn, Anchorage, for appellee.

Patricia L. Zobel and David Floerchinger, Staley, DeLisio, Cook & Sherry, Inc., Anchorage, for amicus curiae Alaska Rural Elec. Co-op. Ass'n., Inc.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

In this products liability action, Leslie Williams challenges several of the trial court's evidentiary rulings and argues that the court erred in denying his motion for a new trial. In a separate appeal, Williams challenges the court's determination that defendant Utility Equipment had the right to satisfy its attorney fee award from the proceeds of a pretrial settlement with two other defendants. The trial court found that Utility Equipment's right to these funds was superior to both Williams' attorneys' rights under Alaska's attorney lien statute and Williams' employer's rights under the Alaska Workers' Compensation Act.

We affirm the court's order denying a new trial but reverse, in part, its order disbursing the settlement funds. We believe that the trial court properly determined that Utility Equipment's Rule 82 award is a "cost of litigation" which must be deducted from the settlement funds held in trust by Williams' attorneys before Williams' employer may obtain reimbursement under AS 23.30.015(g). However, we hold that Utility Equipment's right to satisfy its fee award out of the settlement funds is subordinate to the lien held by Williams' attorneys under AS 34.35.430.

## I. *Facts and Proceedings*

On December 15, 1987, Leslie Williams, an employee of Kodiak Electric Association ("KEA"), suffered a back injury in the course of his employment as he was preparing his truck for a service run. He applied for and has regularly received workers' compensation benefits.

During the course of this litigation, Williams' accounts of his accident have not been entirely consistent. In the accident report he filed with his employer on the day of his injury, Williams attributed the accident to icy conditions as he got off the truck. He wrote "stepping out of bucket truck and onto the snow and icy ground, balance and footing was lost." In a workers' compensation report filed the following day, he wrote "slipped and fell on ice while carrying things."

About a month later, Williams consulted two doctors for his back pain. Both doctors' records indicate that Williams stated that his injuries were caused when he fell from a truck.

In March 1988, Williams consulted a lawyer regarding possible liability for his injuries. A year later, Williams filed a products liability action against Utility Equipment, Kodiak Motors and Service Manufacturing, the manufacturers and distributors of the allegedly defective truck bed. Williams claimed that he fell off the truck due to the defective placement of the locking controls which prevented clear access to the controls. He sought damages for past and future loss of income in an amount in excess of $100,000.

During discovery, Williams admitted in his deposition that he had had problems with substance abuse, but also stated that

he had successfully completed a court ordered treatment program in 1976, and had not used illegal drugs in the last five years. In a signed affidavit, Williams swore that he was not under the influence of drugs or alcohol at the time he fell from the truck. He also clarified the statements he made in his deposition about illegal drug use during the past five years. He admitted having recently procured a portion of a friend's prescription for Dilaudid, a strong narcotic. Williams subsequently filed a motion asking the court to prohibit Utility Equipment from using evidence of his drug use to imply negligence or bad character.[1]

Prior to trial, Williams settled with Service Manufacturing for $50,000. Most of the settlement funds were divided between Williams' attorneys and Alaska Rural Electric Cooperative Association ("ARECA"), KEA's workers' compensation insurer. Williams later settled with Kodiak Motors for $50,000. Williams' attorneys' received this money but did not distribute it to Williams, presumably pending resolution of the competing claims of the attorneys and ARECA.

Williams proceeded to a full jury trial against Utility Equipment. Williams first presented the testimony of James Hamilton, the shop steward at KEA, who stated that Williams had told him he had fallen off the truck the day of the accident.

Next Williams testified that on the day of the accident, he and Darryl Walker were preparing to begin their field work. Williams testified that he climbed onto the truck to latch the truck boom which had not been properly secured. He testified that he lost his balance and fell from the truck as he was dismounting. No one saw Williams fall.

Darryl Walker testified that he heard a "thud" as he entered the garage shortly after Williams. He testified as follows:

Walker: I got to him as quick as I could and asked him what—if he was hurt. He couldn't hardly breathe.

Williams' counsel: What happened next?

Walker: He said he'd fallen off....

Utility Equipment's counsel: Excuse me. I would object—if Mr. Williams can testify, but I think it's hearsay what this witness has said, your honor.

....

The court: The court will allow the testimony at this time.

Williams' counsel: You may continue Mr. Walker, tell us.

Walker: I asked him if he was all right. He was trying to catch his wind. "Les, are you all right?" "No, I hurt my back." So I kind of got him up a little bit so he could get his wind and then he kinda got up. And he got in the pick-up truck.

Williams counsel: Just as [Utility Equipment's counsel] made his objection you were about to say he said something, what was that?

Subsequently, Williams' counsel was unable to get Walker to explicitly state that Williams had told Walker that he had fallen from the truck. On cross-examination, Walker testified concerning the normal procedure for latching the boom. Utility Equipment's counsel also questioned Walker concerning inconsistencies between his deposition and trial testimony.

Williams' counsel later sought to enter into evidence medical records recording Williams' statements that his injury resulted from falling off a truck. The court refused to admit these records on the grounds that these statements were inadmissible hearsay and that they were cumulative of other evidence already presented.

Before Utility Equipment presented its case, the trial court clarified its protective order, stating that it would not allow testimony concerning Williams' use of Dilaudid or other illegally obtained pharmaceuticals. The court stated that it would allow testimony regarding Williams' prescription drug use as long as it was accompanied by a showing of relevance.

1. Apparently the court granted Williams request for a protective order, but this order is not included in the record.

Utility Equipment presented the testimony of Dr. Michael James, a physical rehabilitation specialist who started treating Williams for pain in April 1988. Dr. James reviewed in detail medical records dating back as far as 1983 indicating Williams' history of prescription drug use. He also mentioned that Williams had asked him for stronger medication and that Williams had specifically suggested Dilaudid. Dr. James testified that, in his opinion, Williams suffered from chronic pain syndrome, which is characterized by a long history of prescription drug use. Williams' counsel did not specifically object to this testimony, nor did he ask the court to rule on its relevance outside the presence of the jury.

In rebuttal, Williams presented the testimony of Dr. Loren Halter, who had been treating Williams for a variety of ailments since 1983. Dr. Halter testified in great detail concerning Williams' use of prescription drugs.

The jury asked to rehear Walker's testimony before reaching its verdict. The jury only answered one question on the special verdict form. It found that Williams did not fall off of the truck, and returned a verdict for Utility Equipment. Williams made a motion for a new trial which the trial court denied.

On July 26, 1990, Utility Equipment filed a motion seeking to hold in abeyance the distribution of $50,000 held in trust from the pretrial settlement agreement with Kodiak Motors. Williams opposed this motion. On July 30, 1990, the court ordered these funds to be held pending the court's decision concerning the proper disbursement of these funds.[2] On August 8, 1990, the trial court awarded Utility Equipment $65,500 in fees and costs under Alaska Civil Rule 82. On October 15, 1990, the trial court ruled that Utility Equipment's fees and costs were to be paid first out of the funds held in trust. On November 13, 1990, the court clarified its order, stating:

> [Utility Equipment] has first priority [to the settlement funds] for its attorney's fees and costs under AS 34.35.430(b).

[Williams] and employer follow and their priority is determined by AS 23.30.015(g).

This appeal followed. ARECA filed an amicus brief. At the time of this appeal, ARECA had paid Williams over $170,000 in workers' compensation benefits.

## II. Discussion

### A: Evidentiary Issues

■ This court will review the trial court's decision on admissibility of evidence under the abuse of discretion standard. *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980). The trial court's decision to grant or deny a party's motion for a new trial is likewise reviewed for an abuse of discretion. *Exxon Corp. v. Alvey*, 690 P.2d 733, 741 (Alaska 1984).

#### (1) *Walker's testimony*

■ Williams argues that the trial court improperly excluded Darryl Walker's testimony that he heard Williams say "I fell off the truck" immediately following his accident. Our review of the record does not support his contention. Walker was interrupted by an objection from Utility Equipment's counsel. The trial court overruled the hearsay objection, but Williams' counsel was unable to elicit the desired response from Walker because he was unable to frame his questions appropriately. Furthermore, Walker's subsequent testimony indicates that Williams told him that he had fallen "off the back." We conclude that the trial court did not improperly "exclude" any of Walker's testimony.

#### (2) *Medical records*

■ Williams argues that the trial court improperly excluded medical records substantiating his statement that he had fallen off the truck. The court refused to admit these records, holding that Williams' statements were inadmissible hearsay and cumulative of evidence already presented. Specifically, the court ruled that Williams' statements about falling off the truck were not admissible under the medical diagnosis

---

**2.** Williams' attorneys also held in trust $4,094.79, the undistributed portion of the settlement with Service Manufacturing, for a total of $54,094.79.

exception to the hearsay rule because "whether it was a fall from the truck or slipping on the ice, those are not relevant to the nature of the diagnosis or treatment...."

The evidence rule which governs is Rule 803(4) which provides that:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character or cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment ...

are not hearsay.

We believe that the trial court erred in its hearsay analysis because Williams' statements to his physicians were made for the purpose of diagnosis or treatment, were related to the cause of his back injury, and were reasonably pertinent to its diagnosis or treatment. In *Johnson v. State*, 579 P.2d 20 (Alaska 1978), we observed that

[s]tatements of a patient as to presently existing body conditions are generally admitted as evidence of the facts stated because there is a high likelihood of truthfulness resulting from the patient's belief that the doctor will rely on such statements in his diagnosis and treatment. Where statements going to the cause of a patient's condition relate information desirable for diagnosis and treatment, they are also admissible based on the same indicia of reliability.... McCormick and the commentary on the Federal Rules of Evidence [distinguish] between general statements made going to the cause of injury which are important to diagnosis and treatment, and statements entering the realm of fixing fault. Since statements fixing fault and indicating the identity of an assailant are not relevant to medical diagnosis or treatment, they lack assurances of reliability and should be excluded.

*Id.* at 22 (footnotes omitted). Williams' description of his accident does not directly fix fault or identify an assailant. We also believe that it is relevant to the diagnosis of a back injury whether a person fell from

a height or slipped on the ground. Therefore, under *Johnson*, Williams' statements were not inadmissible hearsay.

However, the court did not abuse its discretion in excluding this evidence as cumulative under Alaska Rule of Evidence 403. This rule provides that relevant evidence "may be excluded if its probative value is outweighed ... by considerations of ... needless presentation of cumulative evidence." Alaska R.Evid. 403. Here, in addition to Walker's testimony, both James Hamilton and Dr. James testified that Williams told them that he had fallen off the truck. These statements substantiate Williams' own testimony that he had fallen off the truck. · The jury certainly heard evidence that Williams had repeatedly reported that he had fallen off the truck. *See Hiller v. Kawasaki Motors Corp.*, 671 P.2d 369, 372–73 (Alaska 1983) (exclusion of evidence not prejudicial where same evidence presented to the jury in a different form).

We conclude that the trial court did not err in excluding these medical records.

### (3) *Dr. James' testimony concerning Williams' drug use*

▮ Williams argues that the trial court violated its own protective order and erroneously admitted Dr. James' testimony concerning Williams' use of Dilaudid and other prescription drugs. During his testimony, Dr. James mentioned Williams' use of Dilaudid. He also testified at length concerning Williams' use of prescription drugs which he stated was indicative of chronic pain syndrome. This testimony was not preceded by a foundation of relevance in the absence of the jury, as the trial court's order had suggested would be necessary.

Although Williams may have had grounds for objecting to Dr. James' testimony, he did not make specific objections while Dr. James was on the stand. In fact, after Dr. James finished testifying, Williams' counsel presented the testimony of another doctor who testified concerning Williams' drug use. We conclude that Williams waived his objections, despite the protective order, when he did not make

specific objections as the testimony was presented. *Alaska State Housing Auth. v. Vincent*, 396 P.2d 531, 534 (Alaska 1964) (a party may not raise objection to evidence on appeal when evidence was admitted at trial without objection).

### B: Disbursement of Settlement Proceeds

At the close of trial, Williams' attorneys held $54,094.79 from the pretrial settlements with Service Manufacturing and Kodiak Motors. The trial court ruled that Utility Equipment's right to satisfy its Rule 82 award from these funds was superior to both Williams' attorneys' rights under AS 34.35.430(b) and Williams' employer's rights under AS 23.30.015(g).[3] Because the proper disbursement of the settlement proceeds depends on the interpretation of AS 34.35.430(b) and AS 23.30.015(g), a question of law is presented. In reviewing a question of law, we will "adopt the rule of law that is most persuasive in light of precedent, reason and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### (1) *The employer's rights under AS 23.30.015(g)*

■ Alaska Statute 23.30.015(g) requires an employee receiving workers' compensation benefits to reimburse the employer from any third party recovery "insofar as the recovery is sufficient after deducting all litigation costs and expenses."[4] We have previously observed that the underlying purpose of this section is to prevent an injured employee from obtaining a double recovery. *Stafford v. Westchester Fire Ins. Co. of New York*, 526 P.2d 37, 40 (Alaska 1974), *overruled on other grounds by Cooper v. Argonaut Ins. Co.*, 556 P.2d 525 (Alaska 1976). In *Cooper*, we interpreted AS 23.30.015(g) to require the employer to pay a pro rata share of the costs of recovery in order to prevent the carrier from reaping a windfall at the employee's expense. 556 P.2d at 527.

The application of AS 23.30.015(g) to this case is difficult because, although Williams recovered from Service Manufacturing and Kodiak Motors, after his unsuccessful trial against Utility Equipment, his total litigation costs exceeded his total recovery. In its amicus brief, ARECA maintains that the settlement recoveries are unconnected to Williams' unsuccessful claim against Utility Equipment and concludes that Utility Equipment has no special claims to payment from these funds. We find ARECA's arguments unpersuasive. Essentially, ARECA asks to share in the fruits of Williams' successful claims while forcing Williams to shoulder the entire cost of his unsuccessful claim against Utility Equipment. We believe that this is contrary to our holding in *Cooper*. *See Cooper*, 556 P.2d at 527. "All litigation costs" must be read broadly to include the costs a plaintiff incurs in pursuing all the claims arising out of his or her injury.

We hold therefore that AS 23.30.015(g) contemplates a net gain from third party actions and allows employers to be reimbursed from that gain. The practical effect of our holding in this case will be to allow plaintiffs like Williams to control funds recovered from third parties while there are still pending claims against other defendants. Although a plaintiff may agree to an earlier disbursement to the employer under AS 23.30.015(g) (and therefore assume the risk that the cost of future litigation may exceed recovery), he or she

---

**3.** Williams argues that the trial court's order holding the settlement funds in abeyance does not conform to Alaska Civil Rule 65. We agree that the trial court's order does not conform to the rules governing either temporary restraining orders or attachment. *See* Alaska R.Civ.P. 65; Alaska R.Civ.P. 88. However, we do not address this issue, since our holding on the merits is dispositive.

**4.** AS 23.30.015(g) provides:

> If the employee or the employee's representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A), (B), and (C) of this section, insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against any amount payable by the employer thereafter.

has the right to retain any funds recovered until all third-party claims are resolved.

### (2) *Williams' attorneys' rights under AS 34.35.430*

 The trial court determined that Williams' attorneys' right to the settlement funds under AS 34.35.430 was subordinate to Utility Equipment's right to recover attorney's fees as a prevailing party.[5] Alaska R.Civ.P. 82. We disagree.

It is undisputed that Williams' attorneys had a lien on the settlement proceeds still in their possession at the close of trial. AS 34.35.430(a)(2); *see In re Sea Catch, Inc.,* 36 B.R. 226, 230–31 (Bankr.D.Alaska 1983). Although AS 34.35.430(b) provides that an attorney lien is "subordinate to the rights existing between the parties," we believe that this section is properly interpreted to apply only to the parties actually involved in each settlement. Utility Equipment was not a party to either pretrial settlement, and therefore is not entitled to priority under AS 34.35.430(b). *See Phillips v. Jones,* 355 P.2d 166, 172 (Alaska 1960) (attorney lien statute should be liberally construed to effect its statutory goal of furnishing security to attorneys for their efforts). To hold otherwise would deter settlements in cases involving multiple defendants. We therefore reverse the trial court on this issue and remand this case to the trial court for a disbursement order consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.

**5.** AS 34.35.430 provides:
(a) An attorney has a lien for compensation, whether specially agreed upon or implied, as provided in this section
(1) first, upon the papers of the client that have come into the possession of the attorney in the course of the professional employment;
(2) second, upon money in the possession of the attorney belonging to the client;
(3) third, upon money in the possession of the adverse party in an action or proceeding in which the attorney is employed, from the giving of notice of the lien to that party;

(4) fourth, upon a judgment to the extent of the costs included in the judgment or, if there is a special agreement, to the extent of the compensation specially agreed on, from the giving of notice of the lien to the party against whom the judgment is given and filing the original with the clerk where the judgment is entered and docketed.
(b) This lien is, however, subordinate to the rights existing between the parties to the action or proceeding.