Ray McCUBBINS and Rona McCubbins,
Appellants and Cross–Appellees,

v.

STATE of Alaska, DEPARTMENT OF
NATURAL RESOURCES, DIVISION
OF PARKS AND RECREATION, Appel-
lee and Cross–Appellant.

Nos. S–7930, S–7990.

Supreme Court of Alaska.

March 5, 1999.

Rehearing Denied Sept. 8, 1999.

George M. Kapolchok, Elizabeth D. Friedman, Anchorage, for Appellants and Cross–Appellees.

Michael C. Geraghty, Tracey L. Knutson, and Sarah Diemer Moyer, DeLisio, Moran, Geraghty & Zobel, Anchorage, for Appellee and Cross–Appellant.

Before MATTHEWS, Chief Justice, and COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## *OPINION*

MATTHEWS, Chief Justice.

### I.  *INTRODUCTION*

Ray Woodrow McCubbins and his wife, Rona McCubbins, appeal from a jury verdict awarding McCubbins $26,914.10 against the State of Alaska for injuries sustained in a diving accident at Big Lake. They appeal the trial court's failure to grant them a new trial on the issue of damages; its determination that the State was the prevailing party for purposes of Civil Rule 82 attorney's fees; and its award of decreased prejudgment interest pursuant to Civil Rule 68.  We hold that the jury's damage award was inconsistent and order a new trial on the issue of damages.

### II.  *FACTS AND PROCEEDINGS*

#### A.  *Facts*

On May 31, 1993, Ray "Woody" McCubbins, his wife, Rona,[1] and several friends went jet skiing at the Big Lake North Recreation Site (Big Lake site) near Wasilla.  The Big Lake site is owned by the State of Alaska and managed by the Department of Natural Resources, Division of Parks and Outdoor Recreation.  A floating orange boomline separates a swimming area from boat traffic on the rest of the lake.  During a break from jet skiing, McCubbins ran into the lake at the swimming area and performed a belly-flop. At this point in the lake, the water was approximately two to three feet deep. McCubbins struck his head on what was likely a large submerged rock.

McCubbins's friends drove him to the AIC Medical Clinic in Wasilla where he was treated by Ed Manning, a physician's assistant. Manning stitched together McCubbins's head laceration and took X-rays of McCubbins's neck, which indicated a "teardrop fracture."

---

1.  Because Rona sued only for loss of consortium, only Woody McCubbins is referred to as "McCubbins" throughout this opinion, unless otherwise indicated.

Manning referred McCubbins to Valley Hospital in Palmer. That same day, Valley Hospital reviewed McCubbins's X-rays, ordered a CT scan and notified McCubbins's Anchorage family physician, Dr. Robert Hall.

McCubbins returned to his job as a truck driver with Weaver Brothers in Anchorage. Three days later McCubbins saw Dr. Hall, who sent him to the Providence Hospital Emergency Room for new X-rays of his neck. Approximately two weeks later, McCubbins referred himself to Dr. Lynn Taylor, a neurologist at the Virginia Mason Medical Center in Seattle. Dr. Taylor concluded that McCubbins had a small compression fracture in a neck bone, but was not a surgical candidate. On Dr. Taylor's advice, McCubbins sought physical therapy at Chugach Physical Therapy in Anchorage. McCubbins testified that the physical therapy increased his pain due to exercises designed to eventually expand the range of motion in his neck.

Dr. Hall reexamined McCubbins in August and released him for work. McCubbins resumed truck driving that month. However, McCubbins began to experience a numbing and tingling sensation in his limbs. He returned to Dr. Hall, who conducted another MRI at Providence Hospital. McCubbins then sought treatment from Dr. Lee Dorey in Tacoma in September 1993. Dr. Dorey recommended that McCubbins undergo a two-level anterior cervical fusion to fuse his fractured neck vertebrae. McCubbins did not obtain a second opinion. McCubbins underwent the fusion surgery and returned to Anchorage in October 1993 for physical therapy but did not return to work. The surgery alleviated the numbness and tingling, but McCubbins's neck pain increased. In November McCubbins returned to Weaver Brothers as a full-time office employee. In the spring of 1994, McCubbins again saw Dr. Dorey because he began suffering from neck pain in a different area. Dr. Dorey conducted a discogram, injecting fluid into McCubbins's spine and taking an X-ray. Dr. Dorey did not recommend additional surgery; instead he referred McCubbins to a pain clinic in Anchorage employing Dr. Robert Swift.

Dr. Swift prescribed narcotic medication for McCubbins's pain.

## B. *Proceedings*

McCubbins and Rona filed a complaint against the State of Alaska on October 26, 1993, alleging that the State was negligent in failing to inspect the Big Lake site for dangerous conditions; warn of subsurface rocks or other dangerous conditions; and remove the submerged rock that McCubbins struck. McCubbins and Rona requested damages for medical expenses, pain and suffering, physical impairment, emotional distress, lost income and loss of consortium. The State answered on December 16, 1993, asserting, *inter alia*, that McCubbins's injuries were caused by his own negligence and that he had failed to mitigate his damages.

Trial was held from January 23 to February 3, 1995. On the issue of damages, McCubbins presented his own testimony, Rona's testimony and the testimony of Dr. Dorey, Dr. Swift, coworker Patrick Smith, employer James Doyle, vocational rehabilitation counselor Jill Friedman, and economist Francis Gallela. The State presented the testimony of physician's assistant Ed Manning, Dr. Taylor, orthopedic surgeon Dr. Douglas Smith, psychologist Dr. Michael Rose, and vocational rehabilitation counselor Richard Stone. On February 3 the jury found the State negligent for failing to maintain the Big Lake site in a reasonably safe condition. The jury also found McCubbins comparatively negligent and attributed 50% fault to him and 50% to the State. By special verdict, it awarded McCubbins $28,800 for future medical expenses, $3,200 for past pain and suffering, and $18,000 for future pain and suffering. The jury awarded no damages for past medical expenses, past earnings, future earning capacity, past physical impairment, future physical impairment, and loss of consortium.

Before the jury was discharged, McCubbins objected to the special verdict, arguing that it was inconsistent and should be resubmitted. The trial court discharged the jury, ruling that the issue could be addressed in post-trial motions. McCubbins then moved for a new trial on the issue of damages. The

court denied McCubbins's motion, noting that the verdict was consistent with the evidence adduced at trial, except for the jury's failure to award damages for immediate post-accident expenses, for which the court later ordered additur. McCubbins moved for entry of final judgment and a new trial, this time alleging improper argument by the State. The trial court held oral argument on the motion for a new trial, but did not issue a second ruling.

The trial court issued a final judgment for McCubbins in the amount of $26,914.10, assessed prejudgment interest against the State at 5.5% pursuant to Civil Rule 68 and determined that the State was the prevailing party. The trial court ordered additur of $3,828.20 for "emergency medical care, physical therapy and evaluation" immediately following McCubbins's accident. McCubbins filed a motion for reconsideration on August 1, 1996, claiming that the State's offer of judgment was invalid and that the trial court should have found McCubbins to be the prevailing party. The trial court denied this motion and awarded the State attorney's fees of $17,348.70.

## III. DISCUSSION

### A. Standard of Review

■■■■■ "The grant or refusal of a motion for a new trial rests in the sound discretion of the trial court, and we will not disturb a trial court's decision on such a motion except

2. AS 09.17.070(a) provides:

> (a) After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract.

3. The dialogue occurred as follows:

> Q Now I have one other record from your office from September 30th that indicates after your one-and-a-half hour appointment with Mr. McCubbins that you had obtained authorization from the Teamsters to proceed to surgery and that you had also obtained authorization from the Teamsters to waive a second opinion. Do you have that record?
> A Yes.
> ....

in exceptional circumstances to prevent a miscarriage of justice." *Buoy v. ERA Helicopters, Inc.,* 771 P.2d 439, 442 (Alaska 1989). The evidence must be "so slight and unconvincing as to make the verdict unreasonable and unjust." *Hutchins v. Schwartz,* 724 P.2d 1194, 1199 (Alaska 1986) (citing *City of Whittier v. Whittier Fuel & Marine Corp.,* 577 P.2d 216, 222 (Alaska 1978)). This court will uphold a refusal "if there is an evidentiary basis for the jury's decision." *State v. Will,* 807 P.2d 467, 469 (Alaska 1991) (citing *Mullen v. Christiansen,* 642 P.2d 1345, 1348 (Alaska 1982)).

### B. Did the Trial Court Abuse Its Discretion by Failing to Grant a New Trial on Damages?

#### 1. Did the State violate the collateral source rule?

■■■ In November 1994 McCubbins filed a motion in limine, seeking to preclude the State from introducing evidence of his health insurance "in any way." The trial court granted the motion "to the extent outlined at AS 09.17.070."[2] McCubbins argues that the trial court abused its discretion in failing to grant him a new trial because the State improperly elicited testimony that his medical expenses were covered by insurance in violation of the collateral source rule. The exchange that McCubbins complains of took place during the State's cross-examination of Dr. Dorey.[3]

> Q What I'm asking you is during the course of your one-and-a-half hour appointment with Mr. McCubbins on the 30th of September you had accomplished a telephone call to the Teamsters authorizing surgery and advising Mr. McCubbins to waive obtaining a second opinion before surgery. Is that a correct reading of that note?
> A No.
> Q What's incorrect about it?
> A Well, I didn't write it out here. My handwriting is at the top and this is one of my office persons.
> Q This is somebody on your staff?
> A Correct. And it said: "Called Teamsters, Susan, any hospital $100 deductible, 90 percent; called Beach Street. ...." I think it is. ". .... review, talked with Sharon at that number, second opinion waived." That does not mean that I waived a second opinion, that means that .... the insurance company didn't require a second opinion, they felt that

McCubbins asserts that the jury "evidently believed that [his] past medical expenses had been paid for by his Teamsters' insurance, but that he would need money for future expenses." McCubbins notes that the trial court recognized that an improper reference was made to a collateral source.

Relying on *Williams v. Utility Equipment, Inc.*, 837 P.2d 1112 (Alaska 1992), the State argues that McCubbins has waived this argument because he "did not make specific objections" when Dr. Dorey mentioned McCubbins's medical coverage during his cross-examination by the State. We agree. In *Williams*, the plaintiff, Williams, filed a motion asking the trial court to prohibit the defendant from using evidence of Williams's prior drug use. *Id.* at 1114. This motion was apparently granted. However, at trial the defense did introduce such evidence and Williams failed to object to it. On appeal, Williams argued that the trial court erred in violating its own protective order. We disagreed, holding that "Williams waived his objections, despite the protective order, when he did not make specific objections as the testimony [about his drug use] was presented." *Id.* at 1116–17.

■ Similarly, in the present case, although McCubbins's motion in limine preventing the State from introducing evidence of his health insurance was granted, McCubbins never objected to the portion of the State's cross-examination of Dr. Dorey which had effectively elicited information about McCubbins's health insurance. Accordingly, because he did not make specific objections to the introduction of this evidence, McCubbins has waived the issue on appeal.[4]

2. *Did the State improperly argue that it was not responsible for subsequent medical negligence?*

■ McCubbins asserts that the State improperly argued that subsequent medical negligence by Drs. Dorey and Swift caused or exacerbated McCubbins's injuries, thus relieving the State of responsibility for these damages. Specifically, McCubbins points to the State's closing argument and its cross-examination of Dr. Dorey, which both suggested that Dr. Dorey negligently recommended McCubbins undergo the fusion surgery.[5] However, McCubbins never objected to any of the State's allegedly improper arguments or questions of which he now complains. As such, he failed to preserve this

they didn't need another opinion, that my opinion was enough to authorize it.

4. Despite the waiver, we may still review the alleged error by the trial court under the plain error standard. However, that standard, which requires a "high likelihood" that the alleged error will result in a "miscarriage of justice," *see Jaso v. McCarthy*, 923 P.2d 795, 800 (Alaska 1996) (citations omitted), is not met here. Even if the trial court did err, the error was harmless because prior to the State eliciting information about McCubbins's medical coverage, McCubbins's own attorney elicited information from McCubbins and his employer that revealed to the jury that McCubbins had medical coverage.

5. McCubbins also argues that the State should be barred from propounding a "mitigation of damages" theory for the first time on appeal since it neither raised this issue before the trial court nor requested a jury instruction on this theory. This argument has no merit. The State raised the affirmative defense that McCubbins had failed to mitigate his damages in its answer, the issue was arguably the State's primary defense on the damage issue, and a mitigation instruction was given to the jury. Jury Instruction Number 31 provided:

Plaintiff is not entitled to be paid for any loss or for part of any loss he could have avoided with reasonable efforts and without undue risk, hardship or embarrassment, even though the loss originally resulted from an act or omission for which the defendant is legally responsible. If you decide that it is more likely true than not true that plaintiff could have avoided any loss or part of any loss with reasonable efforts and without undue risk, hardship or embarrassment, you may not require the defendant to pay the amount plaintiff could have reasonably avoided.

In these instructions I have asked you to decide in two separate contexts whether the plaintiff's actions were reasonable and I want to make sure you understand the difference. Earlier I told you how to decide whether the plaintiff's failure to use reasonable care caused plaintiff's loss. If you decide it did, you were asked to compare the plaintiff's negligence with the negligence, if any, of the defendant. Now I am asking you to decide whether after the loss occurred, the plaintiff failed to use reasonable efforts to minimize or avoid the loss. If you decide (he/she) did, then you may not compensate for the loss which could have been reasonably avoided.

alleged error on appeal. In *Clary Insurance Agency v. Doyle*, 620 P.2d 194 (Alaska 1980), we held that appellants waived their claim about improper closing argument because they "failed to raise their objection in the trial court until the hearing on their motion for a new trial, long after the jury had reached its verdict." *Id.* at 204. We explained that "[o]bjections to statements made during closing argument must be given prior to the time the jury is instructed so that the court has an opportunity to instruct the jury to ignore the statement or to submit a corrective instruction." *Id.; see also* 58 Am. Jur.2d *New Trial* § 164 (1989) ("Generally, in order that a party may seek a new trial on the ground that counsel for the opposing party has made improper remarks or comments, the complaining party must have made a proper and timely objection to the statements, and sought to have the harmful effect thereof removed by an instruction to the jury."). Because he did not timely object to these statements, McCubbins has waived his arguments regarding subsequent medical negligence.

### 3. *Was the jury's verdict logically inconsistent?*

■ McCubbins argues that the verdict is logically inconsistent because the jury awarded damages in some categories but failed to award them in "corresponding" categories. We agree that the jury's verdict awarding damages for future medical expenses but not for diminished earning capacity was inconsistent.

■ "We will not disturb a jury verdict if there is a theory which reconciles the apparent inconsistencies." *Yang v. Yoo*, 812 P.2d 210, 215 (Alaska 1991). No logical theory exists for the jury's award of $28,800 for future medical expenses, but its failure to award anything for diminished future earning capacity. The jury's award of $28,800 for

future medical expenses closely approximated the $28,600 cost for McCubbins's treatment at a pain management clinic, as estimated by his expert. Thus, it is very likely that the jury's award for future medical expenses was intended to cover the costs of McCubbins attending a pain management clinic, especially since one of the State's main arguments at trial was that McCubbins suffered from chronic pain syndrome. The State acknowledges this but argues that the jury could have reasonably concluded that attendance and participation in a pain management clinic would enable McCubbins to resolve his chronic pain problems without impairing his future earning capacity.

This argument fails to address the inconsistencies in the jury's verdict. The State's own witness, Dr. Smith, testified that pain clinic programs generally are "at least five days a week, eight hours a day," lasting for "four to eight weeks." Thus, by traveling to and attending such a clinic, McCubbins will necessarily miss at least four to eight weeks of work. His future earning capacity is diminished by at least the amount of money he would have made in the time necessary to complete a pain management clinic. The jury's failure to award any amount for loss of future earning capacity is therefore internally inconsistent with its award of $28,800 for future medical expenses. Thus, the superior court abused its discretion by not ordering a new trial on the issue of damages.[6] *Cf. State v. Lewis*, 785 P.2d 24, 26–27 (Alaska 1990) (superior court abused its discretion in refusing to order a new trial given that the jury's verdict about the amount of just compensation owed to plaintiff was internally inconsistent).

■ We have held that "when an issue requiring reversal is fairly separable from the other issues involved in the case, we may grant a partial new trial, setting aside only so

---

**6.** The superior court's additur order did not redress the inconsistency of the jury's verdict because the additur focused on past medical expenses, not future earning capacity.

Because we order a new trial on damages based on McCubbins's argument that the jury's award for loss of future earning capacity was inconsistent with its award for future medical

expenses, we find it unnecessary to address his other arguments about the inconsistency of the verdict. Nor do we address his claims that the damages award was inadequate, that the trial court erred in holding that the State was the prevailing party, or that the trial court erred in awarding decreased prejudgment interest pursuant to Civil Rule 68.

much of the judgment as is affected by error." *Poulin v. Zartman*, 542 P.2d 251, 275 (Alaska 1975). "The most typically separable issues are those of liability and damages." *Caterpillar Tractor Co. v. Beck*, 624 P.2d 790, 795 (Alaska 1981) (citations omitted). Those issues are separable in the present case and therefore we order a new trial on the issue of damages only. *Cf. Sturm, Ruger & Co., Inc. v. Day*, 615 P.2d 621, 624 (Alaska 1980) ("in this case the evidence on liability is almost entirely separate from the evidence on damages ... [therefore,] [i]n order to limit the time and expenditure required by a new trial, we direct that there shall be a partial new trial" on the issue of liability).

### C. The State's Conditional Cross–Appeal

The State seeks a new trial on the issue of liability only in the event that we grant McCubbins's request for a new trial on damages.[7] We reject the State's argument that it is entitled to a new trial.

1. *Did the trial court abuse its discretion by excluding testimony relating to inspections of the swimming area?*

■■ According to the State, Doug Sonerholm was a state-employed ranger who had the "primary day-to-day responsibility for the maintenance and operation of the Big Lake North Recreation Site" at the time of McCubbins's accident. Sonerholm resigned in June 1993 and began working for the Wasilla Police Department. The State's July 19, 1994 witness list included Sonerholm as a potential fact witness. The State also notes that it identified Sonerholm in a response to an interrogatory.[8] However, the State had difficulty contacting Sonerholm and did not speak with him until midway through the trial. The State notified McCubbins of the

substance of this contact on January 25, 1995, two days after the beginning of trial, through a supplemental interrogatory response.

On January 30, 1995, McCubbins moved to exclude any testimony regarding "inspection of the subsurface or bottom of the Big Lake North Swimming Area," because the State had failed to disclose this information in response to "very specific" interrogatories. After hearing oral argument, the trial court concluded that the State's supplemental disclosure was untimely, although it noted that the State had not engaged in "intentional misrepresentation." The trial court concluded that McCubbins would be prejudiced by the late disclosure, because at this point in the trial, McCubbins had just completed his entire liability case-in-chief.

The trial court allowed the State to introduce Sonerholm's testimony that he had conducted inspections on shore and in a boat to discover litter and hazards such as broken glass, because it was consistent with the State's answers to McCubbins's interrogatories. Thus, the court only precluded Sonerholm from testifying that he inspected the lake for hazardous objects in hip waders.

The State asserts that it repeatedly attempted to contact Sonerholm in good faith and did not willfully violate the discovery process. Relying on *Wasserman v. Bartholomew*, 923 P.2d 806, 811–12 (Alaska 1996), it argues that any sanction was improper. McCubbins responds that allowing Sonerholm to testify that he inspected the lake in hip waders would have severely prejudiced his case because the State failed to disclose any evidence of such inspections until after McCubbins had completed his liability presentation to the jury.[9]

---

7. McCubbins argues that the State cannot raise this issue because it "failed to request a new trial on the issue of liability in its points on appeal." This argument is without merit. The State, in its points on appeal, did "specifically reserve[ ]" for review the issues it now argues on appeal "in the event a new trial is granted for the McCubbins."

8. The substance of the response is as follows:

Request: Please list which rangers or other state employees were responsible for patrolling the Big Lake North, East Wayside area in 1993.

Response: Prior to Mr. McCubbins' injury on Memorial Day, the following park staff worked at Big Lake North State Recreation Site:

District Ranger Dennis Heikes
Area Ranger Doug Sonerholm
Volunteer Hosts Ned and Fay Johnson

9. The State also argues that the trial court improperly relied on Civil Rule 11 in imposing this sanction. McCubbins responds that the trial court did not rely on Rule 11 to impose the sanction. Although the trial court mentioned

The trial court did not abuse its discretion in limiting Sonerholm's testimony. The State's reliance on *Wasserman* is not persuasive. In *Wasserman*, we held that the trial court improperly excluded the testimony of a non-party witness as a sanction because, under the circumstances, the witness's uncooperative behavior was not properly attributable to the sanctioned defendant. *Wasserman*, 923 P.2d at 812–13. However, *Wasserman* also held that "[t]rial courts have the power to regulate the manner in which evidence is discovered and disclosed at trial. In extreme circumstances, a trial court may properly conclude that only exclusion of a non-party witness's testimony can redress the unfairness of the situation." *Id.* at 812.

Also, in *State v. Guinn*, 555 P.2d 530 (Alaska 1976), we upheld the trial court's exclusion of a State Trooper's testimony because the State, the defendant on whose behalf the Trooper was going to testify, failed to produce the Trooper's notebook on which his testimony was to be based. *Id.* at 542–43. The trial court's exclusion of the Trooper's testimony was upheld even though the State's failure to produce the notebook was not in "bad faith" or a "purposeful deception." *Id.* at 543. Indeed, we explicitly rejected the State's argument that the trial court abused its discretion because "there was no showing of wilful recalcitrance" on the part of the State. *Id.* Thus, the fact that the State in the present case allegedly made good faith efforts to locate Sonerholm is not necessarily dispositive of the issue of whether the court abused its discretion in limiting his testimony. *Accord Fairbanks N. Star Borough v. Lakeview Enterprises, Inc.*, 897 P.2d 47, 58 (Alaska 1995) (citing *Guinn* for the proposition that "a showing of 'wilful' disobedience was not required in order to preclude a witness' testimony.").

Finally, the trial court's sanction was narrowly crafted in that it merely excluded testimony inconsistent with the State's interrogatory responses. The trial court considered other lesser sanctions, concluding that an award of costs would not remedy the disadvantage to McCubbins if the State were allowed to introduce the testimony. Further, the sanction was carefully limited to the nature of the State's violation. The trial court only excluded testimony inconsistent with the State's interrogatory responses. It permitted the State to argue and elicit testimony that inspections for litter and hazards were routinely conducted from the shore and that litter was removed by canoe. Sonerholm did in fact testify at trial, and in closing argument the State emphasized that Sonerholm "paid special attention" to his routine inspections of the swimming area for "stuff in the water." Such narrowly tailored, "less drastic" measures have been previously upheld by this court. *See, e.g., Lakeview Enterprises, Inc.*, 897 P.2d at 58; *Guinn*, 555 P.2d at 543.

Our holding that the superior court did not abuse its discretion in limiting the scope of Sonerholm's testimony is also supported by other authority. *See, e.g., Yukon Equip., Inc. v. Gordon*, 660 P.2d 428, 432 (Alaska 1983) (upholding exclusion of specific testimony for failure to disclose in response to interrogatory); *cf. Grimes v. Haslett*, 641 P.2d 813, 822–23 (Alaska 1982) (holding that trial court has considerable discretion in excluding or limiting testimony); *Drickersen v. Drickersen*, 604 P.2d 1082, 1087 (Alaska 1979) (upholding trial court's exclusion of expert's new opinions offered for first time at trial).

### 2. *Was Jury Instruction Number 23 erroneous?*

The State argues that the trial court improperly included the last sentence in Jury Instruction Number 23. The instruction read:

> Plaintiff's cause of action against the State is based upon and must meet the requirements of the law relating to the

that Rule 11 "makes it clear that counsel are responsible for the facts that they're promoting in litigation," the court went on to explain that the State's response to McCubbins's interrogatory "was incorrect and incomplete compared to what Mr. Sonerholm presently is expected to say." It seems clear to us that the sanction was imposed pursuant to Civil Rule 37. *See Wasserman*, 923 P.2d at 811 (noting that "[a]lthough the court did not explicitly cite Civil Rule 37 in its ruling, the principal source of sanctions for inadequate discovery responses is Civil Rule 37.").

liability of a landowner for a dangerous condition of property.

Before the plaintiff may be entitled to your verdict against the State under this law, you must find from a preponderance of the evidence:

First: That the Big Lake North Recreation Site, and specifically the swimming area at the recreation site, was in a dangerous condition on May 31, 1993;

Second: That the injury of which plaintiff complains was proximately caused by the dangerous condition;

Third: That the injury occurred in a way which was reasonably foreseeable as a consequence of the dangerous condition of the property; and

Fourth: That the dangerous condition had existed for a sufficient period of time or was so obvious, or both, that the State should have discovered and eliminated it.

*The State had a duty to make reasonable inspections.*

(Emphasis added.) The State argues that the trial court misstated the law because the instruction implied that the State had the duty to inspect "each and every piece of remote land it owns."

Implicit in the duty to discover and eliminate hidden dangers of a sufficient duration, which is set out in the "Fourth" part of Instruction 23, is the duty to make reasonable inspections. Thus the last sentence of the instruction did not impose a new duty on the State. As the propriety of the earlier part of the instruction is not challenged, the final sentence cannot be considered error.

Nor do we believe that the final sentence was error in the context of this case. We do not have here undifferentiated public land which people may utilize for recreational pursuits only at their own risk. In *Kooly v. State,* 958 P.2d 1106 (Alaska 1998), we held that the State did not owe a duty of care to sledders who used state rights-of-way as sledding hills. We noted that although the hill where the accident occurred was commonly used for sledding, the State had not "formally dedicated the sledding hill as a recreational area." *Id.* at 1109. We also observed that it was "not possible to make

the thousands of miles of state rights-of-way adjacent to highways safe for sledding." *Id.* Here, by contrast, the area in question was roped off for swimming and was part of a state recreation area. In *Moloso v. State,* 644 P.2d 205, 219 (Alaska 1982), a case involving a state construction area, we observed that landowners have a duty to warn entering persons of hidden dangers of which the entering persons are unaware. Implicit in this duty is a duty to inspect for hidden dangers. Such a duty should properly apply to designated use areas like the swimming area involved in this case.

## IV. CONCLUSION

The jury's verdict awarding damages for future medical expenses and not for diminished future earning capacity was inconsistent. Accordingly, McCubbins's motion for a new trial on the issue of damages should have been granted. No error was committed which requires a new trial on liability, including apportionment of fault. Therefore, we REMAND for a new trial on damages and VACATE the rulings regarding the prevailing party determination and decreased prejudgment interest.