Marsha **BERGER**, Appellant,

v.

**WIEN AIR ALASKA and Underwriters at Lloyds, Appellees.**

Nos. S–8922.

Supreme Court of Alaska.

Jan. 21, 2000.

---

Chancy Croft, Chancy Croft Law Office, Anchorage, for Appellant.

Patricia L. Zobel and John D. Harjehausen, DeLisio, Moran, Geraghty & Zobel, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

In this appeal we must determine whether medical expenses incurred by an employee but paid for by a private insurer or other collateral sources may offset the employer's credit under AS 23.30.015(g). The Workers' Compensation Board determined that because collateral sources paid Marsha Berger's medical expenses, she could not use those expenses to reduce Wien Air Alaska's credit arising from her third-party tort award. Because we hold that AS 23.30.015(g) requires an offset for any medical expenses incurred by an employee that would have been payable by the employer, we reverse the Board's decision and remand for a determination of the amount by which Wien's credit should be reduced.

## II. FACTS AND PROCEEDINGS

Marsha Berger, a flight attendant for Wien Air Alaska, suffered serious injuries in an airplane crash on August 30, 1975. In January 1981 Berger settled her workers' compensation claim against Wien and its insurer, Underwriters at Lloyds (Lloyds). She received $165,000 for her disability benefits, costs, and attorney's fees. Under Alaska's Workers' Compensation Act, however, Wien and Lloyds (collectively Wien) remained liable for Berger's future medical expenses arising from her 1975 injury.[1]

Berger later sued the State of Alaska for negligence with respect to the crash. Pursuant to AS 23.30.015(g), Wien held a workers' compensation lien on any damages Berger recovered in her suit. In May 1983 Berger

and Wien entered into an agreement by which Wien waived its lien against the settlement recovery in exchange for a $174,705.35 credit for any future medical expenses that Berger should incur.

Since that time, Berger has experienced further back problems and has undergone extensive treatment. Her treatment has included "health care for dressing, personal hygiene, laundry, cooking, housework, transportation to emergency rooms and to physicians' offices for appointments." Berger's husband has also provided her home health care since 1984. Collateral sources—Berger's private insurer, her husband's private insurer, and the Veterans Administration (VA)—covered most of her medical expenses. Berger discharged her remaining medical debts in bankruptcy.

Berger's injuries worsened in January 1994, and because she had already incurred over $174,000 in medical expenses, she sought further workers' compensation benefits from Wien. Wien denied Berger's claims, in part because she did not demonstrate that the previous medical expenses had exhausted Wien's credit. Wien argued that the credit remained undiminished since collateral sources—not Berger herself—paid the medical expenses. Berger, on the other hand, argued that her medical expenses otherwise payable by Wien should offset Wien's credit, even though collateral sources paid those bills. Both parties agreed to ask the Board to resolve whether the payment of such medical expenses by collateral sources reduces an employer's credit for those·expenses under AS 23.30.015(g).

The Board determined that "the employee's recovery from collateral sources cannot be used to reduce the defendants' credit." The Board reasoned that workers cannot generally recover payments made by their private insurers absent a subrogation agreement. The Board also viewed Berger's position as an attempt to receive a double recovery, which is generally disfavored under workers' compensation law. The superior court affirmed the Board's decision. Berger appealed.

---

1. See AS 23.30.095.

## III. DISCUSSION

### A. Standard of Review

■ When a superior court acts as an intermediate court of appeal, this court does not give deference to its decision.[2] Rather, "we independently [and directly] scrutinize the merits of the administrative determination."[3] Specifically, "this court reviews the Board's reading of AS 23.30 under the independent judgment standard."[4] Because the Board's interpretation of AS 23.30.015(g) presents a question of law, this court will "adopt the rule of law that is most persuasive in light of precedent, reason and policy."[5]

### B. Under AS 23.30.015(g), All Medical Expenses "Payable" by Wien Reduce Its Credit, Regardless of Berger's Collateral Sources.

#### 1. The language of the statute requires a credit reduction by any "amount payable" by the employer.

■ When an employee recovers on a third-party claim, the employee must reimburse the employer for amounts it has already paid in conjunction with the work-related injury.[6] And when the employee receives a tort recovery that exceeds the amounts paid by the employer, the employer receives a credit against which future medical expenses are offset—provided those expenses are in fact payable by the employer.[7] Moreover, "[i]f the excess is not sufficient to cover future benefits, the employer will again be liable."[8]

■ The language of AS 23.30.015(g) requires a credit reduction by any "amount payable" by the employer, and it does not preclude such an offset when collateral sources pay for the medical benefits:

If the employee or the employee's representative recovers damages from the third person, the employee or representative shall promptly pay to the employer the total amounts paid by the employer under (e)(1)(A)—(C) of this section insofar as the recovery is sufficient after deducting all litigation costs and expenses. Any excess recovery by the employee or representative shall be credited against *any amount payable by the employer* thereafter.

(Emphasis added.) Thus, when an employer would be otherwise responsible under the workers' compensation statute for an employee's medical expenses, the employer's credit decreases. This is true regardless of how those bills were paid or discharged.

Under Alaska's Workers' Compensation Act, employers are "directly liable to healthcare providers for treatment of work-related injuries."[9] Thus, Wien is liable for the medical bills that are related to Berger's work-related injuries, and those bills constitute "amounts payable" under the statute. The statute requires that Wien's credit accordingly decrease by the amount for which Wien would have been responsible under workers' compensation law.

#### 2. The language and purpose of the statute support a credit offset by the amounts payable by Wien.

We have observed that "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[10] Here, the language of AS 23.30.015(g) is unambiguous. The statute states that amounts "payable" by the employer offset the credit; it does not refer to the amounts "paid" by the employee. By focusing on the amounts payable by the em-

---

**2.** *See Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

**3.** *Id.*

**4.** *Rydwell v. Anchorage Sch. Dist.*, 864 P.2d 526, 528 (Alaska 1993).

**5.** *Williams v. Utility Equip., Inc.*, 837 P.2d 1112, 1117 (Alaska 1992) (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**6.** *See* AS 23.30.015(g).

**7.** *See id.*

**8.** *Stone v. Fluid Air Components of Alaska*, 990 P.2d 621, 625 (Alaska 1999).

**9.** *Sherrod v. Municipality of Anchorage*, 803 P.2d 874, 875 (Alaska 1990) (citing AS 23.30.030).

**10.** *Muller v. BP Exploration (Alaska), Inc.*, 923 P.2d 783, 788 (Alaska 1996).

ployer, the legislature apparently intended a credit offset for incurred expenses when the employer *would be liable* for those medical expenses under the workers' compensation scheme.

Even if the statute were not facially clear, however, we have held that the Workers' Compensation Act "should be liberally construed in favor of the employee in accordance with its humanitarian purposes."[11] Thus, any doubt about whether the expenses paid by collateral sources or discharged in bankruptcy should offset Wien's credit "should be resolved in [Berger's] favor."[12]

■ Moreover, when we interpret a statute, we "look to the language of the statute construed in light of the purpose of its enactment."[13] We have already determined that the "clear purpose" of AS 23.30.015 is "to allow employees to seek damages from third-party tortfeasors without jeopardizing their compensation while, at the same time, allowing employers to share in damage awards."[14] Offsetting Wien's credit without regard to who paid Berger's medical expenses satisfies this purpose.

The statute's repayment provisions enabled Berger to sue and recover from third-party tortfeasors while still receiving workers' compensation. Thus, she was able to "seek damages from third-party tortfeasors without jeopardizing [her] compensation."[15] But more importantly, the $174,705 credit

has allowed Wien to share in Berger's recovery. Wien directly benefits by the amount of the credit, because the credit saves Wien the first $174,705 of medical expenses for which it would otherwise be liable. And our decision to offset the credit in no way lessens Wien's share of Berger's recovery.

Indeed, refusing a credit offset for amounts paid by collateral sources would allow Wien not only to "share" in Berger's recovery, but to receive a windfall. Wien has already recovered a $174,705 credit from Berger's tort award, but the Board's decision would have Wien also benefit from Berger's collateral sources.[16] That is, under the Board's refusal to offset Wien's credit, both the tort award *and* Berger's collateral sources would alleviate Wien's obligation to pay workers' compensation. Wien should not receive a windfall simply because Berger was able to obtain care through collateral sources, such as her husband's private insurer and the VA hospital.[17]

This court has articulated a policy against an employer's double recovery.[18] We have held that employers and carriers must share in the costs of recovering an employee's tort award to avoid "unjust enrichment."[19] Otherwise, employers and carriers would benefit from both insurance premiums and the third-party sources.[20] Employers and carriers should not be "unjustly enriched at the expense of the employee."[21] Under this reasoning, Wien should not benefit from both

11. *Forest v. Safeway Stores, Inc.,* 830 P.2d 778, 781 (Alaska 1992). This rule of construction applies to injuries sustained before July 1, 1988. *See id.,* 830 P.2d at 781 n. 7.

12. *Seward Marine Servs., Inc. v. Anderson,* 643 P.2d 493, 497 (Alaska 1982).

13. *Konecky v. Camco Wireline, Inc.,* 920 P.2d 277, 281 (Alaska 1996) (citations omitted).

14. *Forest,* 830 P.2d at 781.

15. *Id.*

16. *See* Restatement of Restitution § 1 cmt. (b) (1937) (stating that a person confers a "benefit" on another "not only where he adds to the property of another, but also where he saves the other from expense or loss").

17. *See Texas Employers' Ins. Ass'n v. United States,* 558 F.2d 766, 768–69 (5th Cir.1977) (holding that an employee was entitled to recover

from his workers' compensation carrier the costs of medical care furnished by Veterans Administration, and stating that a "contrary holding would be a windfall to the insurance carrier merely because the employee was a veteran able to obtain care at a V.A. hospital").

18. *See Cooper v. Argonaut Ins. Cos.,* 556 P.2d 525, 527 (Alaska 1976); *Stone v. Fluid Air Components of Alaska,* 990 P.2d 621, 623 (Alaska 1999).

19. *Cooper,* 556 P.2d at 527.

20. *See id.* (stating that the carrier would receive unjust enrichment if it could take the benefit of both the employer's workers' compensation premium and the employee's litigation effort).

21. *Id.*

Berger's third-party tort award and Berger's collateral sources. The credit exists to benefit Wien by eliminating the first $174,705 of Wien's liability. But Berger's other sources of payment—her private insurer, her husband's private insurer, the VA hospital, and her discharge in bankruptcy—do not exist to relieve Wien of its statutory duty to compensate Berger for the expenses incurred in the treatment of her job-related injury.[22]

> 3. *The Fifth Circuit has interpreted an analogous federal statute to offset the employer's credit where collateral sources pay the employee's medical expenses.*

The Fifth Circuit faced a similar case[23] under the federal Longshore and Harbor Workers' Compensation Act,[24] the statute upon which AS 23.30.015 was modeled.[25] In *Texports Stevedores Co. v. Director, Office of Workers' Compensation Programs,* when the employee received a third-party recovery, the employer maintained that only the medical expenses actually paid by the employee could offset its credit under the Longshore and Harbor Workers' Act.[26] The employee paid only a fraction of his large medical expenses out of his own pocket; collateral sources paid the rest.[27] The court concluded that "the fact that the worker's medical expenses were paid by a third party insurer does not deprive him of the right to recover the value of the medical services from his employer's workmen's compensation insurer."[28] The Fifth Circuit therefore held that the plaintiff's medical expenses—although

paid by collateral sources—could be used to offset the employer's credit.[29]

Similarly here, the fact that collateral sources paid Berger's medical expenses should not deprive her of the right to recover the value of workers' compensation. Both the employer in *Texports* and Wien will have benefitted from the third-party recovery for the amounts they would otherwise be obligated to pay. Hence, as in *Texports,* the "full amount" of Berger's work-related medical expenses "may be used to exhaust [her] tort recovery credit."[30] Indeed, if we did not require a reduction in Wien's credit, Berger would bear "the entire burden of the litigation."[31]

## IV. SCOPE OF REMAND

Because we hold that an employer's credit is offset by any medical expenses that are actually payable by the employer, we must remand this action to the Board. Wien contends that certain of Berger's medical expenses did not result from the plane accident or are otherwise not "amounts payable" under AS 23.30.015(g). Thus, on remand, the Board should determine which expenses—either paid by collateral sources or discharged in bankruptcy—Wien was otherwise responsible for under AS 23.30.015(g). As we have concluded, any amounts payable by Wien should offset the credit, regardless of whether collateral sources in fact paid those expenses.

## V. CONCLUSION

We hold that Wien's credit is offset by any medical payments that relate to the injuries

---

22. See, e.g., *Texas Employers' Ins.,* 558 F.2d at 768–69 (stating that collateral sources should not be burdened with the costs of a job-related injury, and that those costs are more appropriately borne by the employer).

23. See *Texports Stevedores Co. v. Director, Office of Workers' Compensation Programs,* 931 F.2d 331 (5th Cir.1991).

24. 33 U.S.C. §§ 901 et seq. (1984).

25. See *Cooper,* 556 P.2d 525, 526 n. 7 (Alaska 1976) (stating that the "purpose was to bring the Alaska Workmen's Compensation Act into line with the federal Longshoremen's and Harbor Workers' Compensation Act").

26. 931 F.2d at 334.

27. See *id.*

28. *Id.* (quoting 2 Arthur Larson, *The Law of Workmen's Compensation* § 61.12(*l*), at 10–852 (1989)) (internal brackets omitted).

29. See *id.*

30. *Id.*

31. *Cooper,* 556 P.2d at 527 (noting that the legislature did not intend the employer's compensation carrier "to secure a windfall" at the employee's expense, and that the employer or compensation carrier should be required to "pay its pro rata share" to recover the third-party tort award).

Berger sustained in the plane accident and that are otherwise payable by Wien, even if collateral sources paid those expenses. Alaska Statute 23.30.015(g) states that the employer's credit shall be reduced by any "amount payable" by the employer, not by any amount "actually paid" by the employee. The language of the statute unambiguously requires an offset, and there is no contrary language to suggest otherwise. The policy behind this statute—to allow employers to share in employees' damage awards—also supports our conclusion. And denying an offset would allow Wien a double recovery—the $175,000 credit *plus* the amounts the collateral sources have paid. We therefore REVERSE the Board's decision not to offset Wien's credit. We REMAND so that the Board can determine which medical expenses are "payable" by Wien and reduce the credit accordingly.